Sheila WAGNON, d/b/a
Ouachita Valley Nursing Center, Inc. *v.*
ARKANSAS HEALTH SERVICES AGENCY, *et al.*

CA 00-317                                    40 S.W.3d 849

Court of Appeals of Arkansas
Division III
Opinion delivered April 11, 2001
[Petition for rehearing denied May 16, 2001.]

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Janie W. McFarlin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Warren T. Readnour*, Ass't Att'y Gen., for appellees Arkansas Health Services Agency; Sandra Winston, Director, Arkansas Health Services Agency; and Arkansas Health Services Commission.

*Robert D. Smith, III*, and *Tom Tanner*, for appellees Quality Care Nursing Center, Inc., and Quapaw Nursing Center, Inc.

ANDREE LAYTON ROAF, Judge. This is an appeal from an order of the Pulaski County Circuit Court declaring an emergency rule enacted by appellee Arkansas Health Services Commission (hereafter "Commission") invalid and affirming the Commission's subsequent decision to repeal it. The Commission, which is vested with authority to approve permits of approval for nursing homes, and appellee Arkansas Health Services Agency (hereafter "Agency"), which reviews and processes applications for permits of approval, scheduled an emergency meeting on March 22, 1999. Advance notification of the meeting was given to several people, but not to the public, certain entities who had requested notice of all Commission meetings or to entities on the Agency's list of parties affected by proposed Agency and Commission actions. At this meeting, the Commission adopted an emergency rule that permitted it to disregard the overall county occupancy rate provision on a one-time basis in order to approve a new 70-bed nursing home in any county where the projected need for the county exceeded the existing number of beds by 150 or more. This rule concluded with the following statement: "Furthermore, that the Commission finds that imminent peril to the public's health, safety, and welfare requires adoption of this rule to be effective immediately upon filing."

At the time that this rule was passed, the information available to the Commission indicated that the new rule would apply only to Benton County. As it turned out, Garland County also came within its terms. Relying on the emergency rule, appellant Sheila Wagnon,

d/b/a Ouachita Valley Nursing Center, Inc., filed an application for a new nursing home in Garland County on May 3, 1999. On May 21, 1999, appellees Quality Care Nursing Center, Inc., and Quapaw Nursing Center, Inc., which operate nursing homes in Garland County, brought this action challenging the emergency rule. On June 17, 1999, the Commission voted to repeal the emergency rule because of the lack of proper notice given before its adoption. After the Agency returned appellant's application without acting on it, appellant filed pleadings in the circuit court challenging the repeal of the emergency rule.

The circuit judge held that the emergency rule was invalid from its inception because it was not adopted in compliance with the Arkansas Administrative Procedure Act (hereinafter "APA"). He based his decision on the Commission's failure to state in writing its reasons for finding that imminent peril to the public health, safety, and welfare required its adoption without prior notice.

■ Appellant focuses a significant portion of her argument on a mischaracterization of the circuit judge's decision. She asserts that the circuit judge held that, under the APA, the Commission was required to give notice of the emergency meeting and that the notice that was given was insufficient.. She also asserts that the circuit judge construed the emergency rule as one involving local or special legislation. We disagree. The circuit judge clearly based his decision on the Commission's failure to state in writing its reasons for finding that imminent peril to the public health, safety, and welfare required its adoption without prior notice. He did not find that the APA requires prior notice of emergency meetings, nor did he base his decision on the sufficiency of the notice that was given. Additionally, the circuit judge did not find that the rule was an act of special or local legislation.

■ We need not address appellant's argument that the doctrine of equitable estoppel should be applied to require the Commission to consider her application, regardless of the rule's validity, because appellant failed to obtain a finding on this issue. We will not consider an argument on appeal that was not ruled upon by the Commission or the circuit court. *See Olsten Health Servs., Inc. v. Arkansas Health Servs. Comm'n*, 69 Ark. App. 313, 12 S.W.3d 656 (2000).

To the same effect is appellant's assertion that the circuit judge's ruling, that the Agency acted properly in returning the application without reviewing it, impermissibly allowed the Agency to usurp

the Commission's authority to grant or deny applications for permits of approval. Because appellant also failed to obtain a ruling by the Commission or circuit court on this argument, we need not decide it. In any event, it is abundantly clear, at this stage of the proceedings, that the Commission has endorsed the Agency's return of appellant's application. *See* Ark. Code Ann. § 20-8-103 (Repl. 2000).

■ We review agency rulemaking procedures to determine if the agency acted arbitrarily, capriciously, in an abuse of discretion, or otherwise not in accordance with the law. *National Park Med. Ctr., Inc. v. Arkansas Dep't of Human Servs.*, 322 Ark. 595, 911 S.W.2d 250 (1995); *Gurley v. Mathis*, 313 Ark. 412, 856 S.W.2d 616 (1993); *Department of Human Servs. v. Berry*, 297 Ark. 607, 764 S.W.2d 437 (1989). In this case, our review is focused on the Commision's decision to repeal the emergency rule, which was an act of rulemaking. Therefore, the controlling question on appeal is whether the Commission's decision to repeal the emergency rule was arbitrary, capricious, an abuse of discretion, or not in accordance with the law. Because, as explained below, the emergency rule was not enacted in compliance with the law, we cannot say that the Commission's decision to repeal it was arbitrary, capricious, or an abuse of discretion.

Arkansas Code Annotated section 25-15-204(a) (Supp. 1999) provides that an agency must give at least thirty days' notice of its intended action and sets forth the methods for publication of notice. This section also requires that the notice shall be mailed to all persons who have requested advance notice of rulemaking proceedings. There is no doubt that the Commission did not attempt to comply with this section of the statute. However, Ark. Code Ann. § 25-15-204(b) (Supp. 1999) permits an agency to adopt an emergency rule without giving prior notice if the agency finds and states in writing its reasons for finding that "imminent peril to the public health, safety, or welfare requires adoption of a rule upon fewer than twenty (20) days' notice." It was the Commission's failure to follow this section of the APA on which the circuit judge based his decision. Arkansas Code Annotated section 25-15-204(e) (Supp. 1999) provides that an emergency rule may become effective immediately upon filing if the agency finds that it is necessary because of imminent peril to the public health, safety, or welfare, and that the agency's finding and a brief statement of the reasons therefor shall be filed with the rule. No rule shall be valid unless it has been adopted and filed in substantial compliance with section 25-15-204. Ark. Code Ann. § 25-15-204(f) (Supp. 1999).

■ According to appellant, section 25-15-204(b)'s require-
ments are merely "technical" and an emergency rule can validly be
adopted without the Commission's writing and filing the reasons
for its adoption. Although there is no Arkansas case directly on
point, we cannot agree that this statute's requirements are mere
technicalities. The meaning of the phrase "substantial compliance,"
as it applies to the emergency exception to the statute's notice
requirements, cannot be understood without considering the rea-
sons for notice-and-comment proceedings:

> Notice serves three distinct purposes. First, notice improves
> the quality of agency rulemaking by insuring that the agency
> regulations will be tested by exposure to diverse public comment.
> The notice and comment procedure assures that the public and the
> persons being regulated are given an opportunity to participate,
> provide information and suggest alternatives, so that the agency is
> educated about the impact of a proposed rule and can make a fair
> and mature decision.
>
> Second, notice and the opportunity to be heard are essential
> components of fairness to affected parties.
>
> Third, by giving affected parties an opportunity to develop
> evidence in the record to support their objections to a rule, notice
> enhances the quality of judicial review. However, these values must
> be balanced against the public's interest in expedition and finality.
>
> An opportunity to comment granted after a rule is promul-·
> gated cannot substitute for notice and an opportunity to comment
> beforehand.

2 AM. JUR. 2D *Administrative Law* § 166 (1994). Therefore, the
reasons for departing from the notice requirements "should be truly
emergent and persuasive to a reviewing court." *Id.* § 219 at 233.

In *Brodsky v. Zagata*, 629 N.Y.S.2d 373, 377 (N.Y.S.Ct. 1995),
the court was faced with a similar situation:

> It is the decision of this Court that SAPA § 202(6)(d)(iv)
> requires at the very least that an agency seeking an emergency rule
> adoption illustrate the circumstances which give rise to the adop-
> tion of a rule on a[n] emergency basis. The mere parroting of the
> phrase "the public health, safety, or general welfare" with no

specific facts, demonstrates to this Court the total absence of justification for such action. Without detailing the necessity of the adoption of a rule on an emergency basis the danger of abuse is obvious. In this case the manufacturing industry responsible for DEET has accomplished in weeks what it could not do in prior recent years during hearings and before the Courts. The practice avoids those regulatory safeguards in place and which are mandated to preclude such avoidance of SAPA § 202(6)(d)(iv). The requirement of a submitted statement fully describing the specific reasons the "public health, safety or general welfare" are in danger is a reasonable condition precedent which has not been satisfied.

*Accord Florida Health Care Ass'n v. Agency for Health Care Admin.*, 734 So.2d 1052 (Fla. Dist. Ct. App. 1999).

■ In enacting the emergency rule, the Commission was required to state in writing its reasons for finding that imminent peril to the public health, safety, and welfare required its adoption without prior notice. This it did not do. It is obvious, therefore, that the emergency rule was not adopted in accordance with the law; consequently, we cannot say that, in repealing it, the Commission abused its discretion or acted arbitrarily or capriciously.

■■ Appellant also argues that she had a substantive right to have her application considered, even if this rule was invalid. It is true that, if appellant had such a substantive right, the June 17 rule could not affect it retroactively. *See Carmichael v. Nationwide Life Ins. Co.*, 305 Ark. 549, 810 S.W.2d 39 (1991). However, appellant has cited no case that supports her claim that a substantive right was created by this invalid rule. Certainly, appellant's interest was less than fixed or determined. *See Tomerlin v. Nickolich*, 342 Ark. 325, 27 S.W.3d 746 (2000). We therefore hold that a chance to apply for a permit of approval is not equivalent to a substantive right. Additionally, there is no dispute that, without the emergency rule in place, appellant's application would be rejected; therefore, no purpose would be served by ordering the Commission to review it. A case is moot when any decision rendered by the appellate court will have no practical legal effect on an existing legal controversy. *Biedenharn v. Hogue*, 338 Ark. 660, 1 S.W.3d 424 (1999). With few exceptions not applicable here, we will not address moot issues. *See Dillon v. Twin City Bank*, 325 Ark. 309, 924 S.W.2d 802 (1996).

Affirmed.

STROUD, C.J., and PITTMAN, J., agree.