# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1573

_____

Marcel Wayne Williams,                    *
                                          *
          Petitioner/Appellant,           *
                                          *
     v.                                   *
                                          *
Ray Hobbs, Interim Director,              *
Arkansas Department of Correction,        *
in his official capacity,                 *
                                          *
          Respondent/Appellee.            *

_____

No. 10-2899

_____

Appeals from the United States
District Court for the
Eastern District of Arkansas.

Jack Harold Jones, Jr.,                   *
                                          *
          Plaintiff/Appellant,            *
                                          *
Don William Davis; Alvin Bernal           *
Jackson; Stacey Eugene Johnson;           *
Kenneth Dewayne Williams; Jason           *
Farrell McGehee; Bruce Earl Ward,         *
                                          *
     Intervenor Plaintiffs/Appellants,    *
                                          *
     v.                                   *
                                          *
Ray Hobbs, in his official capacity       *
as Acting Director of the Arkansas        *

Department of Correction,                    *
                                              *
        Defendant/Appellee.                   *
                        _____

                Submitted: September 20, 2011
                    Filed:  October 7, 2011
                        _____

Before LOKEN, BEAM, and MURPHY, Circuit Judges.
                        _____

MURPHY, Circuit Judge.

        Several Arkansas prisoners on death row challenged the state's Method of Execution Act (the Act) under 42 U.S.C. § 1983 arguing that it violates the ex post facto clause and their due process right to access the courts. The district court[1] dismissed the prisoners' claims, finding that their arguments were merely speculative, that they had access to Arkansas's current execution protocol, and that they could submit a FOIA request to obtain information on future protocols. In this consolidated appeal the prisoners argue that the district court erred in dismissing their ex post facto clause and due process claims. Appellant Williams also appeals individually contending that the district court erred in denying his habeas petition as second or successive and by refusing to exercise supplemental jurisdiction over a state law claim. Appellant Jones and the prisoners that intervened in his suit appeal the denial of their motion to vacate the judgment. We affirm.

I.

        Arkansas statutorily adopted lethal injection as its method of execution in 1983. Ark. Code Ann. § 5-4-617. As originally drafted, the statute required an inmate to be

_____

        [1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas.

anesthetized before the injection of lethal chemicals. Ark. Code. Ann. § 5-4-617(a)(1). It also required the Director of the Arkansas Department of Correction (Director) to "determine the substances to be uniformly administered and the procedures to be used in any execution." Ark. Code. Ann. § 5-4-617(a)(2). Additionally, the lethal injection statute was interpreted as requiring "a minimum of thirty-days notice prior to any execution of any changes in the protocol." Jones v. Hobbs, 604 F.3d 580, 582 (8th Cir. 2010) (Melloy, J., dissenting); see Ark. Code Ann. § 25-15-204(a)(1).

In May 2008 the Director adopted a lethal injection protocol known as AD 08-28, which immediately faced legal challenges. First, an Arkansas prisoner on death row challenged the adoption of this protocol for failure to comply with the notice and comment provisions of Arkansas's Administrative Procedures Act (APA). See Ark. Dep't of Corr. v. Williams, 2009 Ark. 523, at 2, 2009 WL 4545103, at *2. Second, several inmates challenged AD 08-28 in federal court arguing that it violated the Eighth Amendment. Nooner v. Norris, 2008 WL 3211290 (E.D. Ark. Aug. 5, 2008). As part of the federal suit, the government made the protocol available to the public in a court filing. The federal district court found that it did not violate the Eighth Amendment. Id. at * 15. We affirmed, holding that AD 08-28 was substantially similar to other execution protocols that had been upheld by our circuit and the Supreme Court. Nooner v. Norris, 594 F.3d 592, 608 (8th Cir. 2010).

While the challenges to AD 08-28 were moving through the state and federal courts, the Director lobbied the Arkansas General Assembly to amend Ark. Code Ann. § 5-4-617 . In response, the Assembly passed the Act in April 2009 to "clarify" the procedures for capital punishment by lethal injection. 2009 Ark. Acts 1296. Attributes of the Act include:

(1) It gives the Director "discretion" to determine the kind and amount of chemicals that will be used in an execution, including an ultra short acting barbiturate, a

chemical paralytic agent, potassium chloride, or "[a]ny other chemical." Ark. Code Ann. § 5-4-617(a)(1)–(2).

(2) It no longer includes any statutory requirement that the Director use anesthesia before giving the lethal cocktail to the prisoner.

(3) It gives the Director "discretion" to determine "any and all procedures and policies to be applied in connection with carrying out the sentence of death" including logistics, security, injection preparations, injection implementation, and arrangements for disposing of the body. Ark. Code Ann. § 5-4-617(a)(4)(A)–(E).

(4) It does not designate a time by which the Director must determine the lethal injection protocol.

(5) It specifically exempts the policies and procedures for carrying out the death sentence from Arkansas's APA. Ark. Code Ann. § 5-4-617(a)(5)(A). It also does not subject the policies and procedures for carrying out the sentence of death to the FOIA, "except for the choice of chemical or chemicals that may be injected, including the quantity, method, and order of the administration of the chemical or chemicals." Ark. Code Ann. § 5-4-617(a)(5)(B).

The present appeal is a consolidation of two federal cases that Arkansas prisoners (collectively prisoners) initiated to challenge the Act. Marcel Williams, an Arkansas prisoner under a sentence of death, is the sole named plaintiff in one of the cases. After Williams was convicted of capital murder and had exhausted his claims on direct appeal, see Williams v. State, 991 S.W.2d 565 (Ark. 1999), he filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Arkansas, alleging, among other claims, ineffective assistance of counsel during his death penalty phase. The district court granted his petition. Williams v. Norris, 2007 WL 1100417 (E.D. Ark. Apr. 11, 2007). We reversed after finding that

-4-

the evidence presented by Williams was insufficient for the writ. Williams v. Norris, 576 F.3d 850, 858-63 (8th Cir. 2009).

Williams then filed the present action seeking a writ of habeas corpus, declaratory and injunctive relief under 42 U.S.C. § 1983, and asking the court to exercise its supplemental jurisdiction to declare the Act unconstitutional under Article IV of the Arkansas Constitution. The district court found that Williams had not obtained proper authorization from the Eighth Circuit to file a second or successive habeas petition. Williams v. Hobbs, 2010 WL 749563, at *1 (E.D. Ark. Mar. 2, 2010). The district court also dismissed Williams's § 1983 claim for failure to state a claim upon which relief could be granted because he had access to Arkansas's current lethal injection protocol, he could obtain any future lethal injection protocols by making a FOIA request, and his assertion that the Director would unilaterally change the protocol was speculative. Id. at *3-4. The district court then declined to exercise supplemental jurisdiction over the remaining state law claims because it had dismissed all of his federal claims. Id. at *4.

After Williams's case was dismissed, Jack Harold Jones, another prisoner sentenced to death in Arkansas, challenged the Act on the same grounds that Williams had. Several similarly situated prisoners intervened in Jones's suit. The district court dismissed their case, basing its decision on the same grounds on which it had dismissed Williams's suit. Jones v. Hobbs, 2010 WL 1417976, at *1 (E.D. Ark. Apr. 5, 2010). The district court granted a stay of execution to the two inmates who had execution dates set so that they could appeal the ruling. Jones, 2010 WL 1417976, at *4. We vacated the stays, holding that the two inmates had failed to demonstrate a "significant possibility of success on the merits" because it was "purely speculative" that Arkansas would adopt a different, unconstitutional protocol. Jones v. Hobbs, 604 F.3d 580, 581-82 (8th Cir. 2010) (per curiam).

Jones and the prisoners who intervened in his suit then moved to vacate pursuant to Federal Rule of Civil Procedure 59(e) on the ground that they had found newly discovered evidence showing that the Director believed he had "flexibility" under the Act and that there is a worldwide shortage of anesthesia. The district court denied this motion. Jones v. Hobbs, 745 F. Supp. 2d 886, 894 (E.D. Ark. 2010).

The prisoners appeal the dismissal of their § 1983 claims for failure to state a claim upon which relief can be granted. Williams individually appeals the denial of his habeas petition and the district court's decision not to exercise supplemental jurisdiction over his state law claims. Appellants in Jones's case appeal the denial of their Rule 59(e) motion to vacate the judgment.

During the pendency of the federal litigation, the prisoners have continued to challenge the Act in state court. A state circuit court recently granted partial relief to the prisoners, ruling from the bench that the portion of the Act granting the Director the ability to use "[a]ny other chemical or chemicals, including but not limited to" is unconstitutional. Jones v. Hobbs, No. 2010-CV-1118 (Pulaski Cnty. Aug. 15, 2011). The court struck this language, leaving the part of the Act governing choice of chemicals as follows:

> (a)(1) The sentence of death is to be carried out by intravenous lethal injection of one (1) or more chemicals, as determined in kind and amount in the discretion of the Director of the Department of Correction.
>
> (2) The chemical or chemicals injected may include one (1) or more of the following substances:
>
> (A) One (1) or more ultra-short-acting barbiturates;
>
> (B) One (1) or more chemical paralytic agents;

(C) Potassium chloride; or

(D) Saline solution.[2]

Ark. Code Ann. § 5-4-617(a). Both parties have indicated their intention to appeal portions of the state court's decision in that case. Due to the ongoing state proceedings, the Arkansas Supreme Court has granted six stays of execution to prisoners in this case. See, e.g., Davis v. Hobbs, 2010 Ark. 168. The prisoners moved this court to hold the present appeal in abeyance due to the state court proceedings. We declined to do so because the issues remain ripe for appeal in spite of the modifications made to the statute by the Arkansas circuit court.

## II.

The prisoners first argue that the district court erred in dismissing their § 1983 claim because the Act violates the ex post facto clause of the United States Constitution. U.S. Const. art. I, § 10, cl. 1. We review de novo a district court's dismissal pursuant to rule 12(b)(6), accepting as true the plaintiff's well pleaded allegations. Parkhurst v. Tabor, 569 F.3d 861, 865 (8th Cir. 2009). Surviving a motion to dismiss requires that the complaint contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)).

The ex post facto clause prohibits states from "retroactively alter[ing] the definition of crimes or increas[ing] the punishment for criminal acts." Collins v. Yongblood, 497 U.S. 37, 43 (1990). To sustain a claim under the ex post facto clause,

_____

[2]Prior to the state court's modification the word saline was preceded by the following language: "Any other chemical or chemicals, including but not limited to . . . ."

the prisoners must allege that a law creates "a significant risk" of increased punishment. Garner v. Jones, 529 U.S. 244, 255 (2000). Such a showing must be more than a "speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes," Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 514 (1995), and the ex post facto clause does not "forbid[] any legislative change that has any conceivable risk of affecting a prisoner's punishment." Id. at 508.

The prisoners advance three theories as to how the Act violates the ex post facto clause. First, it creates the risk of a more painful execution by eliminating the requirement that the Director use anesthesia during an execution; second, it increases the prisoners' mental anxiety in the time leading up to the execution; and third, it makes execution protocols less humane by exempting them from the notice and comment requirements of the Arkansas APA. We address each of these theories in turn.

The prisoners first argue that the Act creates a significant risk of more painful execution because it grants the Director the ability to omit anesthesia from the protocol. They allege that the Director will likely omit anesthesia because he lobbied the legislature to make the changes embodied in the current Act, doing so would save money, and it would decrease the record keeping burden on the Director because he would no longer have to document the use of anesthesia.[3] The prisoners cite evidence to support that a person being executed without anesthesia would feel as though he was "being buried alive in a chemical tomb."

---

[3]While an Arkansas circuit court has stricken the portion of the Act affording the Director discretion to use "any other chemical or chemicals" in the execution protocol, the Director retains the discretion to omit anesthesia from the protocol because the statute still provides that he "may" use "ultra-short-acting barbiturates" (anesthesia), but does not require him to do so.

The state responds that the prisoners cannot state a claim for a violation of the ex post facto clause because they only speculate that the Director will someday choose not to use anesthesia. See Twombly, 550 U.S. at 555. The state further contends that the Director could not eliminate anesthesia because doing so would run afoul of the Eighth Amendment and the Arkansas Constitution. The Director should be assumed to act in accordance with the constitution because of the presumption that "public officers act rightly." Pendleton Cnty. v. Amy, 80 U.S. 297, 305 (1871). Moreover, the state urges that because the Director has previously amended the lethal injection protocol to "reduce" the possibility that "a condemned inmate would experience unnecessary pain during an execution," Nooner, 2008 WL 3211290, at *3, any future elimination of anesthesia is highly unlikely.

We agree with the state that the prisoners can do no more than speculate on this point. They cannot concretely show that the Director is likely to eliminate anesthesia at the time of execution. Rather, they only show that the Act makes it "conceivable" that he will do so. Morales, 514 U.S. at 508. This is not the "significant risk" of increased punishment needed for a violation of the ex post facto clause. Garner, 529 U.S. at 255. The speculative nature of the prisoners' theory is compounded by the fact that the Arkansas legislature passed the Act over two years ago and the Director has yet to eliminate the use of anesthesia.

The prisoners next contend that they have demonstrated a facially plausible claim that the Act violates the ex post facto clause because it increases mental anxiety before execution since the prisoners cannot know the manner in which they will be executed. They ground this argument in nineteenth century case law indicating that mental anxiety is a cognizable claim under the ex post facto clause. See In re Medley, 134 U.S. 160 (1890). Medley was a habeas case involving a statute enacted after the prisoner committed his offense. That statute prohibited the warden from communicating to the prisoner the date and time of execution, and the Supreme Court held that it violated the ex post facto clause because it created "an immense mental anxiety amounting to a great increase of the offender's punishment." Id. at 172.

-9-

The state counters that this argument is speculative and that anxiety is the inevitable result of incarceration on death row. Moreover, the prisoners will not suffer increased anxiety because they already have access to the current execution protocol through previous litigation and they can access any necessary information by a FOIA request.

The prisoners also argue that the Act's FOIA provision is insufficient to calm their anxiety because while allowing for disclosure of the chemical or chemicals that may be injected, it does not allow for the disclosure of "the quantity, method, and order of the administration" of those chemicals. They further contend that the FOIA clause does not allow them to obtain access to key information, such as whether the Director will determine that a prisoner is unconscious before the execution proceeds and whether a person with medical training will give the injection. Additionally, they urge that the FOIA provision is illusory because the Act neither requires a written protocol nor that any protocol be finalized a certain number of days prior to the execution. The Director could thus change the protocol shortly before the execution so that a prisoner would lack time to obtain the information through a FOIA request. Or he could merely provide a list of all chemicals that "may" be used at the execution without specifying which chemical will in fact be used.

Because the arguments surrounding mental anxiety focus on the FOIA provision of the Act, we analyze that provision in more detail. It provides:

> The policies and procedures for carrying out the sentence of death and any and all matters related to the policies and procedures for the sentence of death are not subject to [FOIA], <u>except for the choice of chemical or chemicals that may be injected, including the quantity, method, and order of the administration of the chemical or chemicals.</u>

Ark. Code Ann. § 5-4-617(a)(5)(B) (emphasis added). The district court found and the state contends that this section of the Act specifically allows the prisoners to

-10-

obtain information about the Director's choice of chemicals, quantity of chemicals, method of injection, and order of the administration of chemicals.

The plain language of the statute defeats the prisoners' argument that the FOIA provision prohibits disclosure of "the quantity, method, and order of administration" of the chemicals because it expressly indicates that such information will be available through a FOIA request. See Jones, 604 F.3d at 583 (Melloy, J., dissenting). The argument that the Director might provide a list of all possible drugs rather than the specific drugs that will actually be used is speculative.

The prisoners' contention that a FOIA request will be ineffective because the Director may change the protocol too close to the date of execution to allow them time to make such a request is more troublesome. One can imagine a situation occurring where the prisoners must submit a FOIA request every day in order to be sure that the protocol has not changed prior to the execution date. The state's counsel stated at oral argument that he could not imagine a situation in which he would not be able to call the prisoners' counsel personally to inform them of a change in the protocol. This at least provides the prisoners with some assurance that they will receive a timely response to their request for information regarding a new protocol.

While presenting a closer case than their argument regarding omission of anesthesia, the prisoners do not present a plausible ex post facto claim based on increased anxiety. Medley is distinguishable from the present case because the court there was concerned about the secrecy surrounding the date of execution. 134 U.S. at 172. That secrecy was a concrete harm because the prisoners had no way of discovering when the execution would take place. Here, the prisoners' execution will take place on a date certain. What troubles them is not being sure they will have advance notice about the details surrounding the execution. Another circuit has recently rejected the argument that Medley provides prisoners a broad right to know the details of their execution to "avoid uncertainty that unnecessarily creates anxiety." Powell v. Thomas, 641 F.3d 1255, 1258 (11th Cir. 2011) (per curiam).

-11-

The prisoners in this case have access to the current protocol, the ability to make a FOIA request, and assurances by the state's counsel that he will provide them with any new execution protocol upon request. Thus the information the prisoners require to ease their anxiety is discoverable, unlike the date of execution in Medley. The prisoners therefore have not pled facts showing the "significant risk" of increased punishment necessary to make out an ex post facto violation. Garner, 529 U.S. at 255.

The prisoners finally argue that the Act violates the ex post facto clause because it removed the protections of Arkansas's APA. Before the Act was passed, an Arkansas circuit court determined that AD 08-28 was invalid because the Director had failed to follow the APA. See Ark. Dep't of Corr. v. Williams, 2009 Ark. 523, at 3, 2009 WL 4545103, at *3. The passage of the Act while the appeal in that case was pending rendered moot the issue of APA compliance. Id. at 6-7. According to the prisoners, a more humane protocol would have been established had the Director been forced to comply with the rigorous notice and comment requirements of the APA. The state counters that because the Arkansas Supreme Court never reached the issue it is unclear whether the APA applied to execution protocols prior to the Act. The district court concluded that the prisoners merely speculate that their punishment would be more humane had AD 08-28 been subject to the APA.

The prisoners' argument based on the removal of APA protections was properly rejected by the district court. Even if the APA did apply to execution protocols before the Act, the prisoners produced no evidence that public opinion in Arkansas would have been against AD 08-28 or that people would have spoken out against the protocol. Rather, the prisoners merely cite general language from cases suggesting that the notice and comment process provides the public an "opportunity to participate" and allows an agency to be "educated about the impact of a proposed rule." See, e.g., Wagnon v. Arkansas Health Svcs. Agency, 40 S.W.3d 849, 852 (Ark. App. 2001) (quoting 2 Am. Jur. 2d Administrative Law § 166 (1994)). They thus again fail to plead facts showing the "significant risk" of increased punishment needed to make out an ex post facto violation. Garner, 529 U.S. at 255.

Under all three theories the prisoners fail "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. We conclude that the district court properly dismissed the § 1983 claim based on violation of the ex post facto clause.

III.

The prisoners next contend that the district court erred in dismissing their § 1983 claim because they provided facts sufficient to show that the Act denies them their due process right to access the courts. Because this is a challenge to the district court's dismissal of their claim, our review is again de novo. Parkhurst, 569 F.3d at 865.

Those in prison "have a constitutional right of access to the courts." Bounds v. Smith, 430 U.S. 817, 821 (1977). We have held that to state this claim, "a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008). Access to the courts claims typically result from deficiencies in a prison's law library or legal assistance program that hinder an inmate's ability to bring a claim. See Lewis v. Casey, 518 U.S. 343, 351 (1996). By contrast, the due process clause is not meant to "enable the prisoner to discover grievances, and to litigate effectively once in court." Id. at 354 (emphasis in original). The Fourth Circuit has ruled that a prisoner cannot sustain a due process access to the courts claim where the prison system has refused to give him access to its medical protocol. Giarratano v. Johnson, 521 F.3d 298, 305–06 (4th Cir. 2008). The court there determined that the refusal to provide that information did not make it impossible for the prisoner to challenge the medical protocol, it just made it more difficult for him to discover legal claims. Id.

The prisoners argue that the Act violates the due process clause because the secrecy encompassed in it denies them "an opportunity to litigate" their nonfrivolous claim that the execution protocol violates the Eighth Amendment. Hartsfield, 511 F.3d at 831. Because the Director can deviate from the established protocol at any moment, they contend that they will be unable to challenge the protocol in court. Similar to their ex post facto arguments, the prisoners assert that the FOIA clause in the Act is insufficient to protect their rights.

These arguments fail to state a plausible due process access to the courts claim. First, the prisoners argument is grounded in an inability to discover potential claims, which courts have held does not constitute a due process violation. Lewis, 518 U.S. at 354; Giarratano, 521 F.3d at 305–06. The prisoners do not assert that they are physically unable to file an Eighth Amendment claim, only that they are unable to obtain the information needed to discover a potential Eighth Amendment violation. Secondly, the prisoners do not demonstrate "actual injury" because they cannot show that litigating an execution protocol first requires access to the protocol. Indeed, the prisoners argument is belied by the fact that they brought an Eighth Amendment challenge to the then unknown AD 08-28 while asserting in their court filings that the lethal injection proceedings are "top secret." Nooner, 2008 WL 3211290.

Furthermore, we have held that AD 08-28 satisfies the Eighth Amendment requirements, Nooner, 594 F.3d at 608, and the prisoners have not demonstrated that the Director has departed from this protocol. Rather they speculate the he might depart from it in the future. Until the prisoners can put forth evidence that the Director has deviated from the approved protocol, they have no "nonfrivolous" Eighth Amendment claim to bring and thus suffer no "actual injury" by being unable to bring such a claim. Hartsfield, 511 F.3d at 831. The district court was thus correct to dismiss the prisoners' § 1983 claim based on lack of access to the courts.

-14-

IV.

Appellant Williams argues in his individual appeal that the district court erred in declining to exercise supplemental jurisdiction over his state law claim that the Act violates Article IV of the Arkansas Constitution. He contends that because the state never objected to the supplemental jurisdiction, it waived any objection to such jurisdiction. We review a district court's decision not to exercise supplemental jurisdiction for an abuse of discretion. Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004).

A federal district court has discretionary power to decline jurisdiction where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." Johnson, 360 F.3d at 819 (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)). The district court here did not abuse its discretion when it dismissed Williams's state law claim after it had dismissed all of his federal claims.

Williams also argues in his individual appeal that the district court erred in denying his habeas petition as a second or successive petition. We review de novo a district court's dismissal of a habeas petition as second or successive. Williams v. Norris, 461 F.3d 999, 1001 (8th Cir. 2006).

A "second or successive" habeas petition requires authorization from a federal court of appeals prior to filing. 28 U.S.C. § 2244(b)(3)(A). "Second or successive" is a term of art and not every habeas petition that is second in time requires preauthorization. Crouch v. Norris, 251 F.3d 720, 723–25 (8th Cir. 2001). Where a claimant could not have raised a claim in his first habeas petition because it had not yet arisen, he will be allowed to seek a second habeas petition without first obtaining our authorization. Singleton v. Norris, 319 F.3d 1018, 1023 (8th Cir. 2003). Williams

-15-

contends that because his first petition was fully adjudicated by the district court in 2007 and the Act was not passed until 2009, it would have been impossible for him to raise the claims regarding the Act in his first petition. He claims that our authorization was therefore not needed prior to filing.

While we agree that the district court erred in classifying Williams's habeas petition as "second or successive" because he could not have raised his current claims at the time of his first petition, the dismissal of the petition was harmless error. To be reversible, an error "must affect a substantial right of the objecting party, and the burden of showing prejudice rests on that party." Crane v. Crest Tankers, 47 F.3d 292, 296 (8th Cir. 1995). Here, Williams can show no prejudice through dismissal of his habeas petition because he sought identical relief in his habeas petition and his § 1983 claims. The district court properly analyzed his claims under § 1983, as we have done in other instances. See, e.g., Clemons v. Crawford, 585 F.3d 1119, 1122 (8th Cir. 2009). We conclude that the district court's error is harmless.

V.

Following the dismissal of their claims, appellant Jones and the prisoners who intervened in his case moved to vacate the judgment under Federal Rule of Civil Procedure 59(e) because they had discovered new evidence to support their § 1983 claims. The district court denied this motion determining that even if the complaints were amended to include the new evidence, they would "still fail to raise the right to relief above a speculative level." Jones, 745 F. Supp. 2d at 889. We review the denial of a Rule 59(e) motion for an abuse of discretion. Anderson v. Family Dollar Stores of Ark., 579 F.3d 858, 861 (8th Cir. 2009).

Rule 59(e) motions based on new evidence are analyzed in the same manner as Rule 60(b)(2) motions. United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 n.3 (8th Cir. 2006). To prevail on such a motion the movant must show "(1) that the evidence was discovered after the court's order, (2) that the movant exercised

diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, <u>and</u> (5) that the evidence would probably have produced a different result."  <u>Miller v. Baker Implement Co.</u>, 439 F.3d 407, 414 (8th Cir. 2006) (emphasis added).  In support of the Rule 59(e) motion, the prisoners offered a news article stating that a public information officer believed the Act gave the Arkansas Department of Correction "flexibility in case one of the chemicals used in lethal injections became unavailable, was improved or a more effective substitute emerged."  <u>Hobbs</u>, 745 F. Supp. 2d at 888.  The prisoners also offered an article from an Ohio newspaper discussing a worldwide shortage of the anesthetic used in lethal injections.  <u>Id.</u>

The prisoners are unable to meet the requirements for a Rule 59(e) motion because the new evidence they offered does not add anything concrete to the evidence provided in their complaint.  The public information officer's statement regarding the flexibility afforded by the Act is merely speculation that the Director might one day change the chemicals used in the protocol.  This is no different than what the prisoners were able to show prior to discovering the new evidence.  Similarly, the fact that anesthesia is in short supply worldwide does not indicate that the Arkansas Department of Correction is in short supply of the drug.  This evidence only indicates that a future shortage of anesthesia <u>might</u> cause the Director to exclude it from the protocol.  The prisoners thus cannot meet the required showing that this evidence would have produced a different result.  <u>Miller</u>, 439 F.3d at 414.  The district court did not abuse its discretion in denying the Rule 59(e) motion.

## VII.

We affirm the judgment of the district court and its order denying the motion to vacate the judgment.

_____

-17-