SILER, J., delivered the opinion of the court in which NORRIS, J., joined. STRANCH, J. (pp. 240-44), delivered a separate dissenting opinion.
OPINION
SILER, Circuit Judge.
Plaintiffs are Ohio death-row inmates challenging Ohio’s execution protocol and practice. Defendants include Ohio officials as well as anonymous drug manufacturers, compounders, intermediaries, and others involved in Ohio’s execution process. Plaintiffs appeal from a district court’s entry of a protective order precluding the disclosure of any information that could reveal the identity of suppliers or manufacturers of Ohio’s legal-injection drugs as well as anyone related to carrying out executions in Ohio. During the pendency of this appeal, we affirmed a related appeal from an order dismissing certain constitutional challenges to Ohio’s execution protocol. Phillips v. DeWine, 841 F,3d 405 (6th Cir. 2016). We now AFFIRM the entry of the protective order because the district court did not abuse its discretion in concluding that Defendants established good cause for protection from certain discovery.
I.
Starting around 2011, Ohio death-row inmates filed a spate of lawsuits in the Southern District of Ohio to challenge Ohio’s protocols for lethal injunction. In 2014, Ohio enacted legislation to amend Ohio Revised Code § 149.43, thereby creating two new statutes, Ohio Revised Code §§ 2949.221 and 2949.222, to address confidentiality of information about lethal injec *234 tion in Ohio. The secrecy statute precludes, among other things, the release of information that would identify the manufacturer or supplier of drugs for use in Ohio’s lethal-injection protocol. See Ohio Rev. Code Ann. §§ 2949.221, 2949.222. In Phillips, the district court dismissed some of the litigation challenging the protocol on grounds of lack of subject-matter jurisdiction and failure to state a claim. Phillips v. DeWine, 92 F.Supp.3d 702, 718 (S.D. Ohio 2015).
In the litigation giving rise to this appeal, Defendants moved for a protective order to prevent the release of any information in their possession that could identify the sources of Ohio’s lethal-injection drugs. After hearing evidence and testimony from four witnesses, the district court granted the motion and issued the following protective order:
The Court therefore ORDERS that any information or record in Defendants’ possession, custody, or control that identifies or reasonably would lead to the identification of any person or entity who participates in the acquisition or use of the specific drugs, compounded or not, that Ohio indicates in its execution protocol it will use or will potentially seek to use to carry out executions is protected and not subject to discovery. This protective order is intended to extend to those persons who or entities that have not waived or forfeited its protection and who manufacture, compound, import, transport, distribute, supply, prescribe, prepare, administer, use, or test the compounding equipment or components, the active pharmaceutical ingredients, the execution protocol drugs or combination of drugs, the medical supplies, or the medical equipment used in carrying out any execution under Ohio Revised Code § 2949.22. This protective order governs discovery only in this litigation and does not apply outside this litigation or (in the increasingly unlikely event) after this litigation concludes. '
In re Ohio Execution Protocol Litig., No. 2:ll-cv-1016, 2015 WL 6446093, at *9, 2015 U.S. Dist. LEXIS 144926, at *45-46 (S.D. Ohio Oct. 26, 2015). The district court certified the order for interlocutory appeal, and we granted Plaintiffs’ petition to appeal. Shortly thereafter, the district court reassigned and consolidated Phillips with this litigation. Several days after the protective order issued, Plaintiffs moved for a modification that would permit limited disclosures to counsel only under the designation “attorney’s eyes only.” The district court denied the motion, noting that “disclosure of identities subjects the disclosed persons or entities to suit.”[1]
In October 2016, before oral argument, the parties notified the court that Ohio plans to move forward with three scheduled executions, starting with Ronald Phillips’s execution in January 2017. Defendants represented that they intend to use a new three-drug protocol: midazolam hydrochloride, potassium chloride, and one of the following drugs: rocuronium bromide, vecuronium bromide, or pancuronium bromide. The new protocol mirrors the Oklahoma protocol approbated by the Supreme Court in June 2015. See Glossip v. Gross, — U.S. —, 135 S.Ct. 2726, 2734-35, 192 L.Ed.2d 761 (2015) (“The option that Oklahoma plans to use to execute petitioners calls for the administration of 500 milligrams of midazolam followed by a paralyt *235 ic agent and potassium chloride. The paralytic agent may be pancuronium bromide, vecuronium bromide, or rocuronium bromide, three drugs that, all agree, are functionally equivalent for purposes of this case.”).[2]
We affirmed the judgment in Phillips in November 2016 and now address the instant discovery dispute. Phillips v. DeWine, 841 F.3d 405, 432 (6th Cir.2016).
II.
Under Federal Rule of Civil Procedure 26(c)(1), a district court may grant a protective order preventing the production of discovery to protect a party or entity from “annoyance, embarrassment, oppression, or undue burden or expense.” Fed. R. Civ. P. 26(c)(1). We review the grant of a protective order for abuse of discretion. Serrano v. Cintas Corp., 699 F.3d 884, 899-900 (6th Cir. 2012). “The abuse-of-discretion standard does not preclude an appellate court’s correction of a district court’s legal or factual error: ‘A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.’” Highmark Inc. v. Allcare Health Mgmt. Sys., — U.S. —, 134 S.Ct 1744, 1748 n.2, 188 L.Ed.2d 829 (2014) (quoting Cooter & Gell v. Hartman Corp., 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). To that end, “in reviewing a trial court’s evidentiary determinations, this court reviews de novo the court’s conclusions of law and reviews for clear error the court’s factual determinations that underpin its legal conclusions.” United States v. Ganier, 468 F.3d 920, 925 (6th Cir. 2006) (citation omitted).
III.
Plaintiffs argue that the protective order prevents the prosecution of their federal and state causes of action. Plaintiffs maintain that the protective order is contrary to law because the order cuts off all discovery on Ohio’s execution procedures, including previously produced discovery. They contend that the otherwise barred discovery would assist in identifying the suppliers or manufacturers of Ohio’s legal-injection drugs as well as anyone related to carrying out executions in Ohio. Plaintiffs impugn the sufficiency of unknown laboratories using unknown testing protocols to evaluate drugs manufactured or compounded by an anonymous source.
The protective order runs afoul with Rule 26(c), Plaintiffs argue, because Defendants failed to make particular and specific demonstrations of harm. Plaintiffs contend that the district court conflated all groups of Defendants and failed to analyze the particularized harm suffered by each discrete entity. Plaintiffs suggest that the district court immunized the drug . manufacturers and their affiliates from litigation by relying on generalized, objective harm suffered from the risk of threats, intimidation, and harassment. Even fear of abusive litigation, Plaintiffs contend, is insufficient to justify a protective order. According to Plaintiffs, the record is devoid of evidence that, but for the protective order, Ohio could not carry out executions because of harm to drug manufacturers upon discovery of their identities. Plaintiffs emphasize that Defendants did not allege Ohio’s inability to carry out executions as a basis for the protective order. But even so, according to Plaintiffs, *236 Defendants failed to produce or point to any credible, specific evidence in the record to demonstrate an inability to obtain lethal-injection drugs or to carry out executions in the absence of a protective order.[3]
Plaintiffs posit that even if evidence exists of harm to Defendants, the harm caused by cutting off discovery in this case outweighs the harms attributed to Defendants. Plaintiffs argue that the protective order violates procedural due process because the order circumscribes their right to vital information to support their claims. Plaintiffs also asperse the protective order as federalizing a state privilege under Ohio Revised Code §§ 2949.221 and 2949.222, which has no foothold under federal law. In the alternative, to mollify Defendants’ concerns, Plaintiffs request a designation of “attorney’s eyes only” for the discovery covered by the protective order. We disagree and conclude that the district court did not abuse its discretion when entering the protective order.
A.
Parties may seek discovery of any relevant, non-privileged information. Fed. R. Civ. P. 26(b)(1). But district courts have discretion to limit the scope of discovery when the information sought is overbroad or unduly burdensome. Fed. R. Civ. P. 26(b)(2); see also Scales v. J.C. Bradford & Co,, 925 F.2d 901, 906 (6th Cir. 1991) (“Th[e] desire to allow broad discovery is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant.”). The district court may limit the scope of discovery “proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties’ relative access to relevant information, the parties’ resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.” Fed. R. Civ. P. 26(b)(2)(C)(iii). “Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive.” Surles v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007) (internal quotation marks omitted & citations omitted).
To sustain a protective order under Rule 26(c), the moving party must show “good cause” for protection from one (or more) harms identified in Rule 26(c)(1)(A) “with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.” Serrano, 699 F.3d at 901 (citations omitted). The enumerated harms available to support a protective order are “annoyance, embarrassment, oppression, or undue burden or expense.” Fed. R. Civ. P. 26(c)(1). Good cause exists if “specific prejudice or harm will result” from the absence of a protective order. Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop), 661 F.3d 417, 424 (9th Cir. 2011). A court must balance the “right to discovery with the need to pre *237 vent ‘fishing expeditions.’” Serrano, 699 F.3d at 902 (citations omitted).
B.
We conclude that the district court did not clearly err in its factual findings. After hearing testimony and admitting evidence, the district court found that the disclosures would cause an undue burden on and prejudice Defendants by subjecting them to the risk of harm, violence, and harassment and by making it difficult for them to obtain lethal-injection drugs. Plaintiffs do not dispute that the district court provided an accurate account of the record. Instead, they inveigh against the result arising from how the district court resolved testimony and weighed the absence of evidence from certain pertinent sources. True, the record lacks an affidavit from an Ohio manufacturer under duress or direct evidence from one of Ohio’s drug sources; still, the accumulation of evidence favors, a protective order. See Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960)(“It is horn-book law that direct evidence of a fact is not necessary. ‘Circumstantial evidence is not only sufficient, but may also be more certain, -satisfying and persuasive than direct evidence.’ ” (citation omitted)).
The district court scrutinized with care Ohio’s representations, probing whether Defendants (either directly or derivatively) suffered a burden or prejudice from identifying certain entities in association with lethal injection. For example, Defendants produced a privilege log on the eve of the evidentiary hearing, which identified persons or entities that have applied for statutory protection from disclosure. In re Ohio Execution Protocol Litig., 2015 WL 6446093, at *3, 2015 U.S. Dist. LEXIS 144926, at *26. The district .court was skeptical of how to weigh that evidence. Id. In addition, when assessing the witnesses themselves, the district court observed that the testimony was “largely speculative or conelusory, if not outright hyperbolic.” Id. at *2, 2015 U.S. Dist. LEXIS 144926 at *23. But, contrary to Plaintiffs’ contentions, the record persisted from there. Avoiding reflexive solicitude, the district court considered Defendants’ affirmative attestations of the need for protection. Without legitimate dispute, the district court was apprised of how-Ohio has been hobbled in its efforts to perform executions. Amid the stalled status of executions in Ohio, the district court observed, “[i]f execution by lethal injection is legal, and the Unitéd States Supreme Court has repeatedly said it is, then it follows that there must be some manner of carrying it out.” Id. at *9, 2015 U.S. Dist. LEXIS 144926, at *43. The district court referenced' “an email sent to an Oklahoma compounding pharmacy by a citizen,” [which] evinces an undeniable (and perhaps even faith-based) risk to pharmacies or com-pounders, including the personnel that work at such entities,” Id. at *3, 2015 U.S. Dist. LEXIS 144926, at *24-26. In view of witness testimony and other evidence about Ohio’s execution history, the district court found that “[i]f the question is whether a reasonable pharmacy owner or compounder would feel burdened by receiving such an email, the answer is likely if not certainly yes.” Id. at *3, 2015 U.S. Dist. LEXIS 144926, at *25. The district court further identified — as non-dispositive evidence — the existence of Ohio’s secrecy statute, finding “the same concerns that apparently led to the creation of the statute exist: the burden on and prejudice to the state that disclosure presents.” Id. at *7, 2015 U.S. Dist. LEXIS 144926, at *38.
Record evidence supports the district court’s finding of “a particular and specific demonstration of fact, as distinguished from stereotyped and conelusory state *238 ments,” of Defendants’ burden and prejudice in the absence of the protective order. See Serrano, 699 F.3d at 901. Although Plaintiffs disagree with where the findings of fact ultimately lean, they cannot dispute that the district court grounded the findings on competent evidence that supported Defendants’ arguments. Plaintiffs criticize the veracity of testimony and production of a vague privilege log, but fail to appreciate that that evidence was not the summation of the record. It is as if Plaintiffs seek to impose a summary-judgment evidentiary standard when Rule 26(c) merely requires the district court to weigh evidence against the movant’s burden. See id. at 902 (citations omitted). Although the district court did not segregate the burdens and pi'eju-dices among Defendants with stark precision, it correctly found corresponding burdens on the willingness to provide lethal-injection drugs to Ohio and the state actors’ ability to perform executions. The scope of the protective order addresses the identified burdens. To the extent Plaintiffs maintain that Defendants never asserted a burden or prejudice in carrying out executions, that contention is belied by the pragmatic reason Ohio moved for protection initially and the logical consequence of drug manufacturers ceasing to cooperate with Ohio. To ignore Defendants’ interest in a capability to perform executions is to ignore the elephant in the room. Although the district court did not mention the past occurrence of compromised attempts to perform lethal-injection executions, that omission has no bearing on the protective order. Plaintiffs are free to press that evidence on the merits and fail to substantiate how that evidence undermines the entry of the protective order.
C.
The district court did not commit legal error in entering the protective order upon a conclusion that Defendants had demonstrated good cause for protection. Plaintiffs conceded at oral argument that no binding case law exists in favor of their position. Although Plaintiffs later supplemented the record with cases supporting the need for discovery to support their claims, we have never sanctioned blind-faith efforts to unearth the supposition of wrongdoing. See Serrano, 699 F.3d at 902; Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 193 (1st Cir. 2001) (“We will not allow Signal to go on a ‘fishing expedition,’ with the mere ‘hope’ that it will obtain such information.”). That Ohio’s execution protocol is sui generis makes comparisons among other cases for abuse of discretion less apt. But if anything, cases under similar circumstances favor Defendants. See Phillips, 841 F.3d at 420 (“But no constitutional right exists to discover grievances or to litigate effectively once in court.”); In re Mo. Dep’t of Corr., 839 F.3d 732, 736 (8th Cir. 2016) (vacating original panel opinion, granting petition for rehearing, and granting petition for writ of mandamus because identity suppliers of lethal-injection drugs had no relevance to the inmates’ Eighth Amendment claim, disclosure of the supplier’s identity placed an undue burden on the state by preventing it from acquiring the drug for executions, and the inmates offered no assurances that active investigation of the supplier would not lead to further disclosure of identities); Jones v. Comm’r, Ga. Dep’t of Corr., 811 F.3d 1288, 1292-94 (11th Cir.) (death row inmate has no constitutional right to “know where, how, and by whom lethal injection drugs will be manufactured[,]” and no “due process right-of-access claim” to this information exists), cert. denied, — U.S. —, 136 S.Ct. 998,194 L.Ed.2d 16 (2016).
The district court did not err in concluding that Defendants established good cause for the protective order upon finding *239 particularized harm to the drug manufacturers and Ohio’s capability to perform executions. As the district court’s findings support, but for the protective order, Defendants will suffer an undue burden and prejudice in effectuating Ohio’s execution protocol and practices. See Cooey v. Strickland, 604 F.3d 939, 946 (6th Cir. 2010) (“The state has a ‘significant interest in meting out a sentence of death in a timely fashion.’ ” (citation omitted)). That Defendants could have provided more evidence by offering execution team members behind a screen or affidavits from drug sources has no moment. Plaintiffs fail to cite case law compelling Defendants to submit for screened inquisition individuals for which they seek protection. To the extent Plaintiffs suggest that Ohio could follow its lethal-injection protocols by purchasing drugs on the open market and testing the drugs themselves, such a suggestion invites the type of judicial oversight over state proceedings that we are loath to indulge without a greater showing of need. Cf. Johnson v. Heffron, 88 F.3d 404, 407 (6th Cir. 1996) (“Judicial oversight over state institutions must, at some point, draw to a close.”). In addition, the district court did not err in rejecting Plaintiffs’ request to designate certain information subject to the protective order as “attorney’s eyes only.” Taken to an extreme, all protective orders could be circumvented by requesting that otherwise undiscovera-ble information be made available for use by counsel only.
The protective order does not prevent Plaintiffs from prosecuting their claims. The record is replete with even-handed analysis aimed at balancing the need for discovery with strictures to maintain appropriate protection for certain individuals and entities. See, e.g., In re Ohio Execution Protocol Litig., 2015 WL 6446093, at *7, 2015 U.S. Dist. LEXIS 144926, at *39 (“This Court is cognizant of the competing interests at issue here, both those presented by the claims asserted in this case and those overarching goals inherently underlying the instant dispute.”). The district court considered that the protective order, in shielding the identity of drug sources, may prevent Plaintiffs from knowing technician and execution team’s qualifications, the means by which Ohio obtained the lethal-injection drugs, and whether Ohio has complied with the manufacturing process (among other information). Yet Plaintiffs know the drugs to be used under the current protocol. And Plaintiffs do not dispute that — although they would' like to perform more exacting tests — those drugs are subject to compliance with and adherence to federal and state laws and regulations. Defendants emphasized at oral argument that Plaintiffs’ claims are legally implausible and that Phillips “buttresses” their dismissal.[4] To the extent Plaintiffs’ claims fail as a matter of law without need for discovery, the district court should be afforded the opportunity to address their viability in the first instance. Defendants also intimated that they would be amenable to providing samples of the drugs for testing upon court order, which Plaintiffs have failed to pursue as of the date of oral argument. Although knowledge of the facilities and handlers of the drugs could inform Plaintiffs’ testing methodologies, the harm presented by identification of those intimately involved in an execution outweighs the speculative benefit of complete understanding of an industry already heavily regulated. Beyond cavil, this result does not federalize the Ohio secrecy law as a common-law privilege for immunity. *240 The district court referenced the statute as an evidentiary data point for analysis only. And those parties can, of course, still be sued upon knowledge or information of malfeasance. No party defends this result as endorsing a new federal privilege, and we decline to comment further on the effect of secrecy statutes in other disputes.
Sensitive to the procedural-due-process concern that an inmate must have a fair opportunity to challenge unlawful methods of execution, the protective order does not stonewall Plaintiffs’ efforts to obtain relief. Should Plaintiffs seek to obtain samples of the drugs and their independent testing reveal irregularities (or if salient information from other sources comes to light), such events could generate cause for greater investigation and modification of the protective order. Williams v. Hobbs, 658 F.3d 842, 852 (8th Cir. 2011) (rejecting due process arguments and noting that “[u]ntil the prisoners can put forth evidence that the Director has deviated from the approved protocol, they have no ‘non-frivolous’ Eighth Amendment claim to bring and thus suffer no ‘actual injury’ by being unable to bring such a claim”). Plaintiffs have not made a showing on appeal of probable value for additional investigation. See Wilkinson v. Austin, 545 U.S. 209, 221, 224-25, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (citation omitted).
Plaintiffs are correct that risk of litigation is not one of Rule 26(c)’s enumerated harms, but, as the district court concluded, undue burden is a harm that merits protection. See Fed. R. Civ. P. 26(c)(1). Although a discussion of litigation risk could be gleaned from the protective order and subsequent orders, there is no serious dispute that the district court did not rely on the omnipresence of litigation when entering the protective order. In re Ohio Execution Protocol Litig., 2015 WL 6446093, at *7, 2015 U.S. Dist. LEXIS 144926, at *38-39 (“Plaintiffs argue that Defendants are raising Rule 26(c) concerns by proxy, conflating burdens on and prejudice to non-party persons or entities with Defendants’ interests. This contention ignores that the burden is on Defendants and the prejudice is a loss of the ability to pursue, much less fulfill, a lawful duty.”).
Plaintiffs disclaim that they seek a ruling that the death penalty itself is unconstitutional. Just that they seek relief from an execution method sanctioned by the Supreme Court in Glossip under a protocol whose constitutionality we affirmed in Phillips. Certainly some jurists have questioned the constitutionality of the death penalty. Doubtless Ohio has been hindered in its efforts to execute inmates. Yet the law remains valid, and Ohio has an interest in following it through. Thompson v. Bell, 580 F.3d 423, 446 n.l (6th Cir. 2009) (“[T]he government has an essential interest in carrying out a lawfully imposed sentence.” (citations omitted)). Opprobrium alone cannot subvert a lawful practice.
IV.
The district court did not clearly err in its factual findings, and the district court correctly concluded that Defendants have established good cause for the protective order. We cannot detect an abuse of discretion on this record. We therefore AFFIRM because the district court did not abuse its discretion in entering the protective order.
DISSENT

. The district court found the request "not well taken,” noting "confidential information has appeared in the media, despite this Court establishing protections to preclude such disclosure.” Since that order, Plaintiffs submitted a notice to the district court, representing that a journalist found the information through a public docket entry.

. The parties do not brief the implications of this new protocol on the protective order. We assume without deciding that the new protocol falls within the scope of the protective order. This assumption is not binding on the district court, and the district court maintains discretion to modify the protective order as circumstances dictate.

. To the extent Plaintiffs argue that the protective order is unnecessary on the basis that the record contains no evidence of actual drug manufacturers for the current protocol, this position extrapolates too much from Defendants’ representation that “[t]here was no evidence before the District Court that there were any ‘[Drug] Source Defendants’ who could be expected to seek their own protective order or who could be deemed functionally immunized.” Defendants have never admitted that such manufacturers do not exist, just that they are not identified in the record.

. Plaintiffs maintain that the protective order prevents essential discovery for various causes of action (e.g., Ohio Corrupt Practices Act; Federal Controlled Substances Act; Federal Food, Drug, and Cosmetic Act; Racketeer Influenced and Corrupt Organizations Act).