RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MIRNA E. SERRANO et al.,

*Plaintiffs*,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

*Plaintiff Intervenor-Appellant*,

*v.*

CINTAS CORPORATION,

*Defendant-Appellee*.

Nos. 10-2629/11-2057

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 2:04-cv-40132; 2:06-cv-12311—Sean F. Cox, District Judge.

Argued: April 20, 2012

Decided and Filed: November 9, 2012

Before: MOORE, GIBBONS, and ALARCÓN,[*] Circuit Judges.

_____

## COUNSEL

**ARGUED:** Jennifer S. Goldstein, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Gregory M. Utter, KEATING, MUETHING & KLEKAMP PPL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Jennifer S. Goldstein, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellant. Gregory M. Utter, Rachael A. Rowe, KEATING, MUETHING & KLEKAMP PPL, Cincinnati, Ohio, for Appellee.

MOORE, J., delivered the opinion of the court, in which ALARCÓN, J., joined and GIBBONS, J., joined in part. GIBBONS, J. (pp. 28–31), delivered a separate opinion concurring in part and dissenting in part.

_____

[*]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  The Equal Employment Opportunity Commission ("EEOC") appeals two judgments entered by the district court in favor of Cintas Corporation ("Cintas") on sex-discrimination claims under Title VII.  The EEOC alleged that Cintas discriminated against women in its hiring practices for the Service Sales Representative ("SSR") position.  In the first judgment, entered on October 18, 2010, the district court granted Cintas's motion for judgment on the pleadings with respect to the EEOC's pattern-or-practice style claim and granted summary judgment for Cintas on the EEOC's thirteen individual-claimant claims.  In the second judgment, entered on August 18, 2011, the district court granted Cintas's motion for attorney fees and costs in light of its status as the prevailing party.  For the reasons that follow, we **VACATE** both judgments and **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Background

Cintas is a corporation that supplies uniforms to businesses throughout North America.  Sealed Appx. at A-1095.  In fact, it is the largest such supplier with more than 800,000 clients and 400 operating facilities.  *Id.*  Cintas's SSRs are a key component of its workforce and provide the essential function of driving trucks to pick up and deliver uniforms and other products requested by clients.  *Id.* at A-911.  While performing these functions, SSRs are also expected to act as sales representatives by providing any needed customer service, pitching up-sells to existing clients, and collecting payments due for services.  *Id.* at A-911-12.  Because SSRs are constantly out in the field servicing customers, SSRs are in many respects the public "face of Cintas."  *Id.* at A-851.

Given the various demands of the job, SSRs are required to possess both communication and sales skills as well as the physical capacity to drive trucks and make deliveries.  *Id.* at A-439-442.  In addition, all SSRs are required to have a high school

diploma or GED and a driver's license.  *Id.* at A-37.  The selection process for SSR candidates begins with a review of the candidate's application and resume.  *Id.* at A-226, A-228.  Desirable candidates are then selected for a brief screening interview, which may be conducted either in person or on the phone.  *Id.*  Candidates who perform well in screening are then invited to participate in more in-depth interviews and on-the-job simulations, after which an offer of employment may be made.  *Id.* at A-234.

Mirna Serrano (Serrano), a female, unsuccessfully "applied numerous times" for a position as an SSR at Cintas's Michigan Westland location.  R. 876-5 (Serrano EEOC Charge).  Concluding that Cintas's failure to hire her may have been because of her sex, Serrano filed a discrimination charge with the EEOC on April 7, 2000.  *Id.*  On July 3, 2002, after investigating Serrano's claims and then expanding the investigation to include Cintas's female hiring practices throughout Michigan, the EEOC issued a reasonable-cause determination stating that the EEOC had "reasonable cause to believe that [Serrano's] allegations are true" and "reasonable cause to believe that [Cintas] has discriminated against females as a class."  R. 836-40 (EEOC Reasonable-Cause Determination).  That same day, the EEOC sent a proposed conciliation agreement to Cintas suggesting that relief be provided to Serrano, one-hundred and eleven other specified women, and an unspecified number of "other similarly situated females."  R. 836-41 (Proposed Conciliation Agreement at 3-4).  Cintas did not respond or present a counteroffer for settlement.  As a result, almost three years later on April 14, 2005, the EEOC notified Cintas that it was terminating conciliation efforts because they had been unsuccessful.  R. 876-8 (EEOC Conciliation Termination Ltr.).

**B. Procedural History**

In May 2004, while the EEOC and Cintas were still involved in conciliation, Serrano filed a Title VII class-action complaint against Cintas in the U.S. District Court for the Eastern District of Michigan.  R. 1 (Serrano Compl.).  Shortly after conciliation terminated at the end of 2005, the EEOC intervened in the *Serrano* action.  R. 97 (Dist.

Ct. Order, 12/22/05); R. 98 (EEOC Compl.).[1]  In June 2008, the private plaintiffs jointly moved for nationwide class certification, R. 411 (Plaintiffs' Mot. to Certify Class), which the district court denied on March 31, 2009, R. 627 (Dist. Ct. Order, 3/31/09). The remaining named parties proceeded to litigate their individual claims and, by April 2010, all of the individual plaintiffs save Serrano "had their cases either dismissed, settled, or otherwise resolved."  R. 937 (Dist. Ct. Op., 9/20/10, at 2).[2]  Serrano and Cintas later concluded a settlement agreement in September 2010.  *See* R. 937 (Dist. Ct. Op., 9/20/10).

After the class-certification issues were resolved, the EEOC and Cintas held a scheduling conference on August 10, 2009, and the district court set dates for discovery and the final pre-trial conference.  R. 646 (Dist. Ct. Sched. Order, 8/11/09).  In recognition of the denial of nationwide class certification for the private plaintiffs, the EEOC filed an amended complaint on August 20, 2009, which limited its allegations to "a class of women in the State of Michigan" as opposed to females nationwide.  *See* R. 650 (EEOC First Amend. Compl. ¶¶ 8, 9, 11).

On October 21, 2009, Cintas moved for judgment on the pleadings, arguing that the EEOC could assert a claim of pattern-or-practice discrimination only pursuant to the EEOC's authority under § 707, and not under § 706, of Title VII.  R. 662 (Cintas Mot. for Judgment).  The district court granted Cintas's motion on February 9, 2010, R. 723 (Dist. Ct. Order, 2/9/10), and denied the EEOC's request to certify the issue for interlocutory appeal, R. 752 (Dist. Ct. Order, 3/12/10).  Shortly thereafter, the EEOC made a series of motions in light of the district court's ruling.  First, the EEOC moved for an extension of the discovery period to allow additional time to investigate individual-based claims.  R. 731 (EEOC Mot. to Extend Discovery).  Next, the EEOC moved to compel Cintas to produce, among other things, unredacted employment

---

[1] In July 2006, the *Serrano* case was consolidated for pretrial purposes with related case *Avalos et al. v. Cintas Corp.*, No. 06-12311.  R. 143 (Dist. Ct. Order. 7/10/06).  The EEOC was already an intervenor in the *Avalos* case prior to consolidation.  *See* R. 144 (Dist. Ct. Order, 7/10/06).

[2] Plaintiff Tanesha Davis timely appealed the district court's denial of class certification and grant of summary judgment on her individual claim.  Case No. 06-12311, R. 669 (Notice of Appeal).  This appeal is proceeding before another panel of this court.  *See* Sixth Circuit Case No. 10-1662.

applications bearing the applicants' last names, addresses, and telephone numbers.  R. 759 (EEOC Mot. to Compel).  With both of these motions still outstanding, the EEOC moved to file a second amended complaint in order to add § 707 as a basis for its claims. R. 765 (EEOC Second Mot. to Amend).

The district court denied the discovery motions one by one.  First, after a hearing, the district court denied the motion for an extension of discovery on April 5, 2010.  R. 783 (Dist. Ct. Order, 4/5/10).  Next, upon advice from the magistrate judge, the district court refused to compel Cintas to produce the unredacted employment applications.  R. 807 (Magistrate Order, 4/22/10); R. 843 (Dist. Ct. Order, 7/7/10).  After these rulings, on the final day of discovery, the EEOC sent notice of its intent to depose Scott Farmer, Cintas's President and CEO.  On May 3, 2010, Cintas moved for a protective order barring the deposition.  R. 816 (Cintas Mot. for Protective Order).

On June 2, 2010 after the close of the discovery period, the district court denied the EEOC's motion to file a second amended complaint.  R. 829 (Dist. Ct. Order, 6/2/10); R. 940 (Amended Dist. Ct. Order).  The next day the magistrate judge held a hearing on Cintas's motion for a protective order, and then issued an order granting the motion.  R. 831 (Magistrate Order, 6/10/10).  Although the EEOC filed objections, R. 834 (EEOC Objections), it does not appear that the district court ever ruled on them.

On June 25, 2010, Cintas moved for summary judgment alleging that the EEOC failed to satisfy the administrative prerequisites to suit under § 706.  R. 836 (Cintas *Omnibus* Mot. for Summary Judgment).  On July 14, 2010, Cintas moved for summary judgment on the merits of each of the individual claimants' claims.  *See* R. 848, R. 850, R. 852, R. 854, R. 856, R. 858, R. 859, R. 862, R. 864, R. 867, R. 869, R. 871, R. 873 (Cintas Mots. for Summary Judgment).  Between September 3 and 10, 2010, the district court granted judgment in Cintas's favor on each of the individual summary-judgment motions.  *See* R. 923-935 (Dist. Ct. Opinions).  The district court thereafter also granted Cintas's omnibus motion alleging administrative default on September 20, 2010.  R. 936 (Dist. Ct. Opinion, 9/20/10).  The district court entered judgment on October 18, 2010,

R. 941 (Judgment, Case No. 10-2629), and the EEOC filed a timely notice of appeal, R. 1070 (Notice of Appeal, Case No. 10-2629).

On October 18, 2010, Cintas moved, as the prevailing party, for attorney fees and costs, R. 943 (Cintas Mot. for Fees and Costs), and the district court granted the motion on August 4, 2011, R. 1079 (Dist. Ct. Op., 8/4/2011). The district court entered judgment on August 18, 2011, R. 1080 (Judgment, Case No. 11-2057), and the EEOC filed a timely notice of appeal, R. 1081 (Notice of Appeal, Case No. 11-2057).

## II.  ANALYSIS

The EEOC raises a number of challenges to the district court's resolution of its claims against Cintas. In particular, the EEOC argues that the district court erred in: (1) holding that the EEOC could not pursue a pattern-or-practice style claim pursuant to § 706 of Title VII; (2) denying the EEOC leave to amend its complaint; (3) refusing to extend the time for discovery; (4) declining to compel Cintas to produce unredacted employment applications; (5) granting a protective order barring the deposition of Scott Farmer ("Farmer"); (6) granting summary judgment in favor of Cintas on the thirteen individual claims; (7) holding that the EEOC failed to satisfy its administrative prerequisites to suit; and (8) awarding Cintas attorney fees and costs. We address each issue in turn.

## A.  Pattern or Practice of Discrimination

The first, and ultimately most salient, issue in this case concerns the disagreement among the parties as to whether the EEOC is limited to proving its allegations of discrimination pursuant to the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework, or whether it may employ the pattern-or-practice framework announced by the Supreme Court in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977). Before delving into the substance of this dispute, it is worth reviewing the legal landscape for Title VII discrimination claims and situating the *McDonnell Douglas* and *Teamsters* frameworks within that context.

### 1. Title VII Discrimination Claims

"The Supreme Court has recognized two distinct types of Title VII employment discrimination:  'disparate treatment' and 'disparate impact.'"  *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995); *see also Bowdish v. Cont'l Accessories, Inc.*, No. 91-1548, 1992 WL 133022, at *3 (6th Cir. June 12, 1992) (unpublished opinion) ("Courts have recognized two different types of claims under [Title VII]:  'disparate impact' claims and 'disparate treatment' claims.").  "Disparate impact claims involve facially neutral employment practices that have disproportionate impact on protected classes of individuals" while "[d]isparate treatment claims . . . involve intentionally discriminatory employment practices."  *Bowdish*, 1992 WL 133022, at *3; *United States v. Brennan*, 650 F.3d 65, 89-90 (2d Cir. 2011).  Plaintiffs asserting a disparate-treatment claim must prove discriminatory motive or intent, while plaintiffs asserting a disparate-impact claim need not.  *Huguley*, 52 F.3d at 1371 ("Unlike disparate impact, a disparate treatment claim obligates the plaintiff to show discriminatory intent or motive for a *particular* adverse employment decision.") (citing *Teamsters*, 431 U.S. at 335-36 n.15).  The Title VII jurisprudence has developed to allow plaintiffs to make their showing of discriminatory intent for disparate-treatment claims either through direct or circumstantial evidence.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002); *Foster v. Cuyahoga Cnty. Bd. of Comm'rs*, No. 97-3504, 1998 WL 57481, at *1 (6th Cir. Feb. 3, 1998) (unpublished opinion) ("To advance a disparate treatment claim, a plaintiff must show that the employer has a discriminatory motive, which may be shown by direct evidence or through inference based on a prima facie showing of discrimination.") (citing *McDonnell Douglas*, 411 U.S. at 802), *cert. denied*, 525 U.S. 937 (1998).

Both *McDonnell Douglas* and *Teamsters* provide frameworks through which a plaintiff can prove intentional discrimination through circumstantial evidence. *See Birch v. Cuyahoga Cnty. Probate Ct.*, 392 F.3d 151, 165 (6th Cir. 2004) ("[T]he *McDonnell Douglas* . . . paradigm [is] utilized for intentional discrimination cases premised solely on circumstantial evidence."); *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 183 (3rd Cir. 2009) ("The *Teamsters* framework was judicially promulgated as a *method of*

*proof* for pattern-or-practice claims brought by the government under Title VII, as that statute authorizes—it provides a means by which courts can assess whether a particular form of statutorily prohibited discrimination exists, just as the *McDonnell Douglas* framework does for individual claims of disparate treatment." (emphasis added)); *Ekanem v. Heath & Hosp. Corp. of Marion Cnty., Ind.*, 724 F.2d 563, 575 (7th Cir. 1983) ("The 'pattern or practice' theory of proof set forth in *Teamsters* and its progeny affords plaintiffs wide latitude in attempting to establish circumstantial evidence of unlawful intent.").

The *McDonnell Douglas* burden-shifting framework consists of a three-step process. It requires a plaintiff first to establish a prima facie case by presenting evidence from which a jury could find that "(1) [plaintiff] is a member of a protected class; (2) [plaintiff] was qualified for [the] job; (3) [plaintiff] suffered an adverse employment decision; and (4) [plaintiff] was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2380 (2009). "Once the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* "[I]f the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Id.* at 391-92.

The *Teamsters* framework is distinct. It charges the plaintiff with the higher initial burden of establishing "that unlawful discrimination has been a regular procedure or policy followed by an employer or a group of employers." *Teamsters*, 431 U.S. at 360. Upon that showing, it is assumed "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy" and, therefore, "[t]he [plaintiff] need only show that an alleged individual discriminatee unsuccessfully applied for a job." *Id.* at 362. The burden then shifts to "the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons." *Id.* "When the Government seeks individual relief for

the victims of the discriminatory practice," bifurcation of proceedings may be proper because "a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief." *Id.* at 361.

The two structures are similar insofar as they impose the initial burden on the plaintiff to present facts sufficient to create an inference of discrimination. *See id.* at 358. However, the substance of what the plaintiff must prove to prevail in establishing a prima facie case varies under each framework. In addition, the *Teamsters* framework contemplates a bifurcation of proceedings that the *McDonnell Douglas* framework does not. Accordingly, the district court's decision that the EEOC could not proceed under the *Teamsters* framework matters greatly to the structure of the proceedings as they move through discovery and eventually to trial. Before reviewing the merits of the district court's decision in this regard, it is useful to clarify its procedural posture for context.

After answering the EEOC's complaint and attending a scheduling conference, Cintas moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). R. 662 (Mot. for Judgment). In support of the motion, Cintas argued that the EEOC failed to state a claim for pattern-or-practice discrimination because the EEOC brought suit pursuant to § 706 of Title VII, and not § 707. The district court agreed with Cintas's arguments and granted judgment in its favor. R. 723 (Dist. Ct. Op., 2/09/10). However, in addition to concluding that the EEOC cannot pursue a claim under the *Teamsters* pattern-or-practice framework when it acts pursuant to § 706, the district court also made clear that the EEOC erred in never pleading its intent to rely on the *Teamsters* framework: The district court concluded that "[d]espite *more than ample opportunity* to express its intention to prosecute this action under the *Teamsters* framework, the EEOC only chose to formally raise the issue and inform the Court - and Cintas - of its intentions at the eleventh hour in this litigation." *Id.* at 12. Thus, the district court emphasized the EEOC's failure to state in its complaint that it planned to proceed under the *Teamsters* pattern-or-practice framework and concluded that "[o]n these procedural facts alone" Cintas was entitled to judgment on the pleadings. *Id.*

Consequently, although Cintas has focused primarily on the legal issue of the EEOC's enforcement authority under § 706, we must also consider whether the EEOC satisfied its pleading obligations.  Because both decisions implicate a question of law, we review them de novo.  *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) ("We review de novo a judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

### 2.  *Teamsters* **Framework in an EEOC Suit Pursuant to § 706**

The first issue that we must address, and the one given considerable attention by Cintas on appeal, is whether the EEOC may employ the *Teamsters* framework only when it acts pursuant to § 707.  For the reasons that follow, we conclude that the EEOC's enforcement authority is not so limited.

Cintas is correct that § 706 does not contain the same explicit authorization as does § 707 for suits under a pattern-or-practice theory.  *Compare* 42 U.S.C. § 2000e-5(b), (f)(1) (§ 706) ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved" and "the Commission determines after [its] investigation that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."  If "the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against" the respondent.), *with* 42 U.S.C. § 2000e-6(a), (e) (§ 707) (The Commission may "bring a civil action" against a private entity when it "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter.").  However, relevant Supreme Court precedent suggests that the exclusion of pattern-or-practice language from § 706 does not mean that the EEOC may utilize a pattern-or-practice theory only when bringing suit under § 707.  Instead, it suggests that the inclusion of the language in § 707 simply means that the scope of the EEOC's authority to bring suit is more limited when it acts pursuant to § 707.

The premise for the Supreme Court's decision in *Teamsters* was that *McDonnell Douglas* did not create "an inflexible formulation" for burden shifting, but rather embodied the "general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters*, 431 U.S. at 358. Thus, the Court explained, a plaintiff has flexibility in how she meets that initial burden, and variance based on the facts of the case is expected. *See id.* at 360. The Court in *Teamsters* then analogized the facts surrounding discrimination claims brought by the EEOC under § 707, which are limited to allegations of a pattern or practice of discrimination, to the facts in *Franks v. Bowman Transportation Co.*, 424 U.S. 747 (1976), a class-action lawsuit. *Teamsters*, 431 U.S. at 359-61. The Court in *Teamsters* concluded that "the nature of a pattern-or-practice suit brings it squarely within" the burden-shifting framework endorsed in *Franks*, *i.e.*, a framework in which class-action plaintiffs satisfy their initial burden of proof by making out a prima facie case of a policy of discrimination, which it is then left to the defendant to rebut. *Id.* at 360.

The *Teamsters* opinion, while ostensibly specific to suits that the EEOC brings pursuant to § 707, in no way indicated an intent to tie the pattern-or-practice framework exclusively to the EEOC's enforcement authority under § 707. To the contrary, the Court's reliance on *Franks,* a class-action case invoking § 706, suggests that the holding of *Teamsters* is not to be so narrowly circumscribed. Subsequent Supreme Court decisions affirming the viability of EEOC class claims under § 706 and Congress's "general intent to accord parallel or overlapping remedies against discrimination" further support this reading of *Teamsters*. *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 333 (1980) (internal quotation marks omitted); *see also id.* at 324 ("Given the clear purpose of Title VII, the EEOC's jurisdiction over enforcement, and the remedies available, the EEOC need look no further than § 706 for its authority to bring suit in its own name for the purpose, among others, of securing relief for a group of aggrieved individuals."); *id.* at 331 ("We are reluctant, absent clear congressional guidance, to subject § 706(f)(1) actions to requirements that might disable the enforcement agency from advancing the public interest in the manner and to the extent contemplated by the statute.").

The EEOC asserts that the Sixth Circuit's decision in *EEOC v. Monarch Machine Tool Co.*, 737 F.2d 1444 (6th Cir. 1980), is binding precedent endorsing *Teamsters*'s application in the § 706 context. *Monarch* was a § 706 case in which this court cited *Teamsters* and *Franks* to conclude "that the trial should have been bifurcated, if class-wide discrimination was properly found." *Id.* at 1449. *Monarch* came closest to endorsing the EEOC's reading of *Teamsters* in a footnote stating: "Although we realize the Supreme Court in *Teamsters* was discussing the proper procedure for the district court to follow in a section 707 pattern-and-practice suit, it adopted this procedural framework from *Franks* which dealt with class actions under section 706." *Id.* at 1449 n.3. Given the procedural posture of the case, and that the application of *Teamsters* in the § 706 context is only implicitly endorsed, *Monarch*'s precedential value is ambiguous. *See id.* at 1449 (stating that court was reviewing trial-court decision issued prior to the Supreme Court holding that § 706 suits brought by the EEOC need not conform to Rule 23's class-action requirements). Nevertheless, *Monarch* stands as at least one example of a Sixth Circuit case applying the *Teamsters* framework to a suit brought by the EEOC pursuant to § 706, and there appear to be no Sixth Circuit decisions to date holding that *Teamsters* may not be applied in the § 706 context.

Cintas's strongest argument is that allowing the EEOC to pursue Title VII claims pursuant to the *Teamsters* framework under § 706 would render § 707 superfluous—a result that Congress could not have intended. This argument is buttressed by Cintas's contention that Congress's 1991 amendments to § 706 adding compensatory and punitive damages—remedies not added to § 707—evidence a desire to prevent the availability of these remedies when the EEOC seeks to vindicate pattern-or-practice discrimination. Cintas has a point that reading § 706 to permit *Teamsters*-style claims creates some overlap with § 707. Moreover, Congress may have wanted to provide the EEOC with two different vehicles for initiating two different types of Title VII suits, each with its own advantages and disadvantages in terms of scope, burden of proof, and available remedies. However, an important distinction prevents § 707 from becoming superfluous even if *Teamsters* applies in the § 706 context: § 707 permits the EEOC to initiate suit without first receiving a charge filed by an aggrieved individual, as it must

when initiating suit under § 706. *See EEOC v. Int'l Profit Assocs., Inc.*, No. 01 C 4427, 2007 WL 844555, at *9 (N.D. Ill. Mar. 16, 2007) (unpublished opinion). It is reasonable to conclude that the presence of a previously filed charge by an aggrieved person was the distinction upon which Congress wished the availability of particular remedies to rise and fall. In fact, this is arguably the most logical interpretation of congressional intent given that the need for compensatory and punitive damages diminishes when the EEOC is not seeking compensation for a specific victim of discrimination.

Cintas also suggests that allowing the EEOC to pursue the pattern-or-practice method for § 706 claims will allow the EEOC to "have its cake and eat it too" because the *Teamsters* framework provides a more generous standard of proof and § 706 affords greater remedies. This argument is based on a mistaken premise. The *Teamsters* framework is not an inherently easier standard of proof; it is simply a different standard of proof. Indeed, under *Teamsters*, the plaintiff's initial burden to make out a prima facie case is heightened. Unlike under the *McDonnell Douglas* framework, where a plaintiff must show membership in a protected class, objective qualifications for the job, and an adverse employment decision from which others similarly situated but not part of the protected class were spared, *White*, 533 F.3d at 391, under *Teamsters* the plaintiff must demonstrate the existence of a discriminatory procedure or policy, 431 U.S. at 360. This is no simple task, as the plaintiff "must prove that discrimination 'was the company's standard operating procedure—the regular rather than the unusual practice.'" *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012) (quoting *Teamsters*, 431 U.S. at 336). It is only because this initial requirement is more arduous that after the showing is made it is assumed "that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy." *Teamsters*, 431 U.S. at 362. Even then, the defendant still may rebut the assumption by providing "lawful reasons" for the employment decision. *See id.* Thus, the EEOC must always weigh the risks—as well as the benefits—of proceeding under the *Teamsters* framework, for doing so involves a greater chance of losing at the prima facie stage.

Accordingly, we hold that the district court erred in concluding that the EEOC may not pursue a claim under the *Teamsters* pattern-or-practice framework, pursuant to its authority vested in § 706 of Title VII.

**3. Failure to Assert *Teamsters* Framework in Complaint**

Having concluded that the EEOC may pursue its claim under the *Teamsters* pattern-or-practice framework pursuant to its authority under § 706 of Title VII, we turn to the question whether the EEOC is barred from doing so in this instance because of deficiencies in its pleadings. As previously explained, the district court concluded that the EEOC's failure to plead its intent to prove its Title VII claim pursuant to the *Teamsters* pattern-or-practice framework in its complaint entitled Cintas to judgment on the pleadings. The district court's ruling of law was erroneous in light of controlling Supreme Court precedent.

The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), which neither the parties nor the district court discussed, has important implications for this issue. In *Swierkiewicz*, the Supreme Court resolved "the question whether a complaint in an employment discrimination lawsuit must contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework." *Id.* at 508. The Court answered in the negative and explained that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510. Thus, the Court reasoned, because "the precise requirements of a prima facie case can vary depending on the context," and the appropriate type of prima facie case may not be evident until discovery is conducted, it would be improper to impose "a rigid pleading standard for discrimination cases." *Id.* at 512. In so holding, the Court recognized that in any given case a plaintiff may rely on direct or circumstantial evidence to prove the alleged intentional discrimination and, prior to knowing the universe of evidence available, it may be difficult to determine which theory is likely to be more successful. *Id.* at 511-12.

Consequently, *Swierkiewicz* establishes that so long as a complaint provides an adequate factual basis for a Title VII discrimination claim, it satisfies the pleading

requirements of Federal Rule of Civil Procedure 8(a)(2).  *See Lindsay v. Yates*, 498 F.3d 434, 439-40 (6th Cir. 2007).  In this regard, the pleading requirements for Title VII claims are no different than those for other claims; they are subject to the same requirement of setting forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Moreover, *Swierkiewicz* remains good law after the Supreme Court's decision in *Twombly*.  *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*.").  In *Twombly*, the Court noted that "*Swierkiewicz* did not change the law of pleading, but simply re-emphasized that the Second Circuit's use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements."  *Twombly*, 550 U.S. at 570 (internal quotation marks and alterations omitted).  The Court then emphasized that its decision in *Twombly* "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.*  This Circuit has continued to apply *Swierkiewicz*, and there is no reason not to do so in this instance.  *See Keys*, 684 F.3d at 609–10; *Lindsay*, 498 F.3d at 440 n.6.

*Swierkiewicz* compels the conclusion that a plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* or the *Teamsters* burden-shifting evidentiary framework.  *Keys*, 684 F.3d at 606; *see also Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (recognizing that any disagreement over the evidentiary framework under which to proceed is "premature" at the pleadings stage), *cert. denied*, 131 S. Ct. 2091 (2011).  Although a plaintiff must "offer[] evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act," *Teamsters*, 431 U.S. at 358, *Swierkiewicz* explained that plaintiffs are not required to commit to one methodology of evidentiary proof to substantiate that inference in their complaint, 534 U.S. at 511-12.  Because *Swierkiewicz* provides that, at the pleading stage, a plaintiff need not indicate whether she seeks to prove intentional discrimination through direct or circumstantial evidence, it necessarily follows that a plaintiff need not indicate at the pleading stage which

circumstantial evidentiary framework—*McDonnell Douglas* or *Teamsters*—she intends to employ. A contrary holding would impose an even more rigid pleading requirement than that which the Supreme Court rejected in *Swierkiewicz*. In fact, it would be akin to requiring a plaintiff to plead the theory of the case in the complaint, a requirement which has been rejected unequivocally even outside of the Title VII context. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 (3d ed. 2012).

In sum, *Swierkiewicz* and *Teamsters* indicate that the district court erred in holding that Cintas was entitled to judgment on the pleadings in light of the EEOC's failure to plead its intent to rely on the *Teamsters* framework. *Teamsters* provides an evidentiary framework pursuant to which the EEOC may seek to prove its allegations of intentional discrimination, not an independent cause of action. *See Hohider*, 574 F.3d at 183. The EEOC, therefore was under no obligation to plead its intent to utilize the *Teamsters* framework; the EEOC was required only to set forth sufficient facts in its complaint upon which its claim for relief under Title VII was plausible. *See Twombly*, 550 U.S. at 570. Accordingly, it would be improper for this court to affirm the district court's ruling that the EEOC committed some sort of procedural default by failing to plead its intent to pursue the *Teamsters* pattern-or-practice framework in its complaint.

We do observe that the EEOC's complaint is not a model of good lawyering. The complaint is sparse—the substance of its allegations span only four brief paragraphs. Perhaps the EEOC relied on the private plaintiffs' complaint as establishing the context. Indeed, in light of that context, we are deeply suspicious of any argument by Cintas that it had no idea that the EEOC intended to proceed on a theory of discrimination that involved class-based allegations of pattern-or-practice discrimination.[3] Thus, were Cintas on remand to challenge the EEOC's complaint on

---

[3] It is undisputed that the EEOC did not include "pattern or practice" language in its complaints. While the EEOC's original complaint did cross reference the private plaintiffs' Second Amended Complaint, which alleged that Cintas "engag[ed] in a nationwide policy, pattern or practice of denying 'Service Sales Representative' positions to female applicants," R. 70 (Plaintiffs Second Amend. Compl. ¶ 1), this cross reference was deleted from the EEOC's First Amended Complaint, *compare* R. 98 (EEOC Compl. ¶ 8), *with* R. 650 (EEOC First Amend. Compl. ¶ 8), which the EEOC filed after the private plaintiffs were denied nationwide class certification, *see* R. 627 (Dist. Ct. Order, 3/31/09). Of course,

proper terms—that being on the adequacy of the factual basis for its allegations of discrimination—the appropriate remedy would be to grant the EEOC leave to amend the complaint to provide a more detailed factual basis. This result would be equitable in light of the fact that, to date, Cintas has not challenged the specificity of the EEOC's factual allegations of discrimination, and that the contours of the litigation have been clear to all parties involved since the outset.

## B. Motion for Leave to File a Second Amended Complaint

After the district court held that the EEOC could not proceed under the *Teamsters* framework pursuant to § 706, the EEOC moved to amend its complaint to include § 707 as the statutory basis for its claims. The district court denied the motion upon concluding that the EEOC unduly delayed in seeking the amendment and that allowing amendment of the complaint would prejudice Cintas. R. 829 (Dist. Ct. Order, 6/2/10). Because we hold that the EEOC may proceed under the *Teamsters* framework pursuant to § 706, the EEOC's appeal of the denial of its motion to amend is moot. However, because we are remanding to the district court to permit the EEOC to proceed under the pattern-or-practice-style framework pursuant to § 706, the district court may

---

when amending its complaint, the EEOC could have included explicit pattern-or-practice allegations rather than just deleting the cross reference. The EEOC did not do so, however, and its rationale is unknown. Counsel at oral argument provided no explanation other than to say that the EEOC did not believe it necessary to include such language in its complaint.

Despite the absence of explicit pattern-or-practice language in the complaint, however, it strains credulity that Cintas was blind-sided at the scheduling conference by the EEOC's assertion that it would seek to prove that Cintas engaged in unlawful discrimination pursuant to the *Teamsters* pattern-or-practice framework. First, the private class-action suit in which the EEOC intervened concerned allegations that Cintas engaged in a pattern or practice of unlawful discrimination. *See* R. 70 (Plaintiffs Second Amend. Compl. ¶ 1). The denial of Rule 23 nationwide class certification for the private plaintiffs had no impact on the EEOC's class claims because Rule 23 does not apply to suits brought by the EEOC. *Gen. Tel. Co. of the Nw.*, 446 U.S. at 323; *see also Davoll v. Webb*, 194 F.3d 1116, 1146 n.20 (10th Cir. 1999) (denying class certification but upholding EEOC's Title VII claim pursued under a pattern-or-practice framework). Moreover, the EEOC's response to the denial of class certification was not to remove all class-based allegations from its complaint, but rather to limit the scope of its class to women in Michigan as opposed to women nationwide. If anything, this should have signaled to Cintas that the EEOC would be proceeding on the same theory, just on a more limited scope.

The EEOC's amended complaint also made clear that the EEOC's allegations extended beyond isolated incidents of discrimination. The EEOC alleged that Cintas "refused to recruit and hire women as Route Sales Drivers/Service Sales Representatives *throughout the State of Michigan* because of their sex" and purported to seek relief for "a *class of women* in the State of Michigan." R. 650 (EEOC First Amend. Compl. at 2, ¶¶ 8, 9) (emphasis added). The EEOC also requested relief tailored to remedying class-based harms: The EEOC requested an order that Cintas "institute and carry out polices, practices, and programs that provide equal employment opportunities for women and eradicate the effects of its past and present unlawful employment practices." *Id.* at 4.

wish to reconsider the merits of permitting a second amended complaint in light of the changed circumstances.

## C.  Discovery Disputes

As previously mentioned, the EEOC challenges three discovery orders issued by the district court prior to its final judgment on the merits:  (1) an order denying the EEOC's request for extension of discovery; (2) an order denying the EEOC's motion to compel Cintas to produce unredacted employment applications by Cintas; and (3) a protective order barring the deposition of Cintas executive Scott Farmer.  We review these discovery decisions for abuse of discretion.  *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010) ("We review a district court's denial of additional time for discovery for an abuse of discretion."); *United States v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006) ("We review the denial of a motion to compel production, as an evidentiary matter within the trial court's discretion, for an abuse of discretion."); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) ("We review the district court's decision to grant a protective order for an abuse of discretion.").

### 1.  Motion to Extend Discovery

The EEOC made clear that its motion for an extension of discovery was filed in light of the district court's ruling that the EEOC could not proceed under the *Teamsters* pattern-or-practice framework.  *See* EEOC Br. at 98 ("After the February order, EEOC faced the prospect of proving sex discrimination through scores of individual disparate treatment cases, rather than the *Teamsters* framework for which it had spent years preparing.  EEOC realized that it would be unworkable to develop cases for all potentially-injured female applicants in the short discovery period remaining, and so it immediately moved (on February 17, 2010) for a discovery extension.").  Because we have held that the EEOC may proceed under the *Teamsters* framework, the EEOC's appeal of the denial of this specific motion is moot.  Moreover, although it is likely in light of our pattern-or-practice ruling that a new period of discovery will be necessary, we defer to the district court's judgment on this matter in the first instance.

### 2.  Motion to Compel Production of Unredacted Applications

The EEOC also appeals the denial of its motion to compel Cintas to produce unredacted versions of the employment applications that the company produced during discovery.  The magistrate judge initially denied the EEOC's motion because of the district court's pattern-or-practice ruling, concluding that the EEOC was not entitled to this discovery in light of proceeding solely on the thirteen individual claims.  R. 807 (Magistrate Order, 4/22/10, at 2).  The district court affirmed this ruling over the EEOC's objections.  R. 843 (Dist. Ct. Order, 7/7/10).  Due to our ruling that the EEOC may proceed under the pattern-or-practice framework, the district court's rationale for denying this discovery request no longer exists.  Accordingly, we vacate the district court's ruling and remand for further proceedings.

### 3.  Deposition of Scott Farmer

In 2003, at Cintas's annual management meeting, Scott Farmer, Cintas's CEO, directed the attendees—as part of his discussion of diversity, a "key initiative" for the coming year—to "put the myth that females cannot be SSRs out of your mind and hire more women SSRs."  Sealed Appendix at A-28, A-32.  During the course of discovery, the EEOC entered notice of its intention to depose Farmer based on this statement. Cintas opposed the deposition and sought a protective order, which the magistrate judge granted.  The magistrate judge, applying the "apex doctrine"—a doctrine that bars the deposition of high-level executives absent a showing of their "unique personal knowledge" of relevant facts—concluded that taking the deposition of Farmer was improper because the EEOC had failed to demonstrate that Farmer had personal knowledge about the individual claimants' rejected applications for employment.[4]  R. 831 (Magistrate Order, 6/10/10, at 5-6); *see also* R. 816-2 (Farmer Aff. ¶¶ 5-9) (stating under oath that Farmer has no personal knowledge of these individual hiring decisions). The magistrate judge asserted that the "apex doctrine" is "well recognized" and cited in support *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998), and *Lewelling v.*

---

[4]It does not appear that the district court ruled on the EEOC's objections to the order issued by the magistrate judge.

*Farmer's Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989). R. 831 (Magistrate Order, 6/10/10, at 3, 6). The EEOC argues that the magistrate judge misconstrued the relevant law because the "apex doctrine" has not been recognized and applied by this court.

Federal Rule of Civil Procedure 26(c)(1)(A) provides that a district "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, inter alia, barring the deposition of that individual. "To justify restricting discovery, the harassment or oppression should be unreasonable, but 'discovery has limits and . . . these limits grow more formidable as the showing of need decreases." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2036 (3d ed. 2012). "Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Id.*

As articulated by the magistrate judge, the "apex doctrine" appears to assume that "harassment and abuse" are "inherent" in depositions of high-level corporate officers and therefore allow such depositions to be barred absent "a showing that the individual possesses relevant evidence which is not readily obtainable from other sources." R. 831 (Magistrate Order, 6/10/10, at 3-4). A few district courts in the Sixth Circuit have recently applied the apex doctrine claiming that while "the term 'apex deposition' has not been used by the Court of Appeals for the Sixth Circuit . . . this Circuit [has] used the same analysis without using the specific term." *HCP Laguna Creek CA, LP v. Sunrise Sr. Living Mgmt., Inc.*, No. 3-10-0220, 2010 WL 890874, at *3 n.4 (M.D. Tenn. Mar. 8, 2010) (unpublished order); *see also Moore v. Weinstein Co.*, No. 3:09-cv-166, 2011 WL 2746247, at *3 (M.D. Tenn. July 12, 2011) (unpublished opinion); *Jones Co. Homes, LLC v. Laborers Int'l Union of N. Am.*, No. 10-mc-50989, 2010 WL 5439747, at *3 (E.D. Mich. Dec. 28, 2010) (unpublished order). We disagree.

This Circuit has endorsed the view that to justify a protective order, one of Rule 26(c)(1)'s enumerated harms "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"

*Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).  In keeping with this principle, while we sometimes have considered the need for the deposition—*i.e.*, its potential to result in relevant testimony—in reviewing the grant or denial of a protective order, we have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order.  Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, we have declined "to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden," and still required the corporate officer to meet Rule 26(c)(1)'s requirements.  *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 907 (6th Cir. 2009) (unpublished opinion).

For example, in *Elvis Presley Enterprises. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991), we upheld a protective order barring the deposition of Priscilla Presley ("Presley"), a corporate executive of the plaintiff corporation, but independently verified the order's compliance with Rule 26(c)(1).  Although we noted that Presley had filed an "affidavit stating that she had no knowledge" relevant to the particular trademark and state-law claims at issue, we also considered her sworn statement that the "primary purpose in deposing her would be to harass and annoy her."  *Id.*  In so doing, we declined to assume that Presley's role as a corporate officer warranted the assumption that the deposition would be unduly burdensome.

Neither *Bush* nor *Lewelling* dissuades us of this view.  *Bush* involved an order by the district court barring the deposition of one corporate official and limiting the length and scope of another's to questions regarding the officer's involvement in the adverse employment decision at issue.  161 F.3d at 367.  Although in *Bush* we discussed the relevant knowledge both corporate officers had regarding the case, we ultimately upheld the district court's limitations, concluding that they "seem[ed] a reasonable way to balance [plaintiff's] right to discovery with the need to prevent 'fishing expeditions.'"  *Id.*  In so concluding, we balanced the burdens on the deponent with the need for access to information relevant to the case, thus ensuring compliance with Rule 26(c)(1).

Similarly, in *Lewelling*, we upheld a protective order barring the deposition of the "then-Chairman of the Board of Directors and Chief Executive Officer" of the defendant corporation. *Lewelling*, 879 F.2d at 218. The decision was brief, mentioning only the fact that plaintiffs had offered to cancel the deposition in exchange for settlement negotiations and that the corporation asserted that its officer had no knowledge relevant to the case. *Id.* Though not explicitly discussed, plaintiffs' offer to cancel the deposition in exchange for settlement indicated that its deposition notice was being used as an oppressive bargaining chip, contrary to the purpose that deposition requests are meant to serve. Therefore, cognizant of Rule 26(c)(1), we upheld the protective order.

Accordingly, we conclude that the magistrate judge erred as a matter of law in relying on "apex doctrine" to grant the protective order. In doing so, the magistrate judge considered only Farmer's knowledge relevant to the EEOC's claims and failed to analyze, as required by Rule 26(c)(1), what harm Farmer would suffer by submitting to the deposition. This error of law constitutes an abuse of discretion that warrants vacating the magistrate judge's order. *See United States v. Clay*, 667 F.3d 689, 694 (6th Cir. 2012) ("[I]t is an abuse of discretion to make errors of law or clear errors of factual determination.") (internal quotation marks omitted).

Regardless, the magistrate judge's conclusion that Farmer is unlikely to have any information relevant to the issues in the case is undermined by our ruling that the EEOC may proceed under the *Teamsters* pattern-or-practice framework. Farmer's statements do suggest high-level-corporate awareness of Cintas's failure to hire females for the SSR positions, and this goes to the heart of what the EEOC will seek to prove in proceeding with its claims toward trial. In this sense, Farmer's testimony is likely to be highly probative, and he will need to demonstrate a substantial burden to justify a protective order barring discovery. *See* 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER ET AL., FEDERAL PRACTICE AND PROCEDURE § 2036 (3d ed. 2012). Accordingly, we vacate the district court's order and remand for further proceedings.

**D. Summary Judgment:  Individual Claims**

The district court granted summary judgment to Cintas on the EEOC's claims on behalf of thirteen individuals; the court found that the EEOC had failed to make out a prima facie case of sex discrimination for eight claimants and that the EEOC had failed to rebut Cintas's neutral explanations for its hiring decisions for five claimants.  Because these summary-judgment determinations were made under the *McDonnell Douglas* framework, we vacate the grant of summary judgment and remand to permit the parties to proceed under the *Teamsters* framework.  Nevertheless, there is one point of law worth clarifying given its potential relevance to the future proceedings.

The district court concluded that the EEOC failed to state a prima facie case of sex discrimination for eight of the individual claimants because each claimant was not objectively eligible for employment due to allegedly dishonest representations in her employment application.  The EEOC argues that this conclusion was erroneous because the district court evaluated the candidates' eligibility for employment based on after-acquired evidence of dishonesty in conflict with the Supreme Court's decision in *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995).  At issue in *McKennon* was "whether an employee discharged in violation of the [ADEA] is barred from all relief when, after her discharge, the employer discovers evidence of wrongdoing that, in any event, would have led to the employee's termination on lawful and legitimate grounds."  513 U.S. at 354.  Given ADEA's purposes, the Court declined to adopt "[a]n absolute rule barring any recovery of back-pay."  *Id.* at 362.  However, the Court recognized that this after-acquired evidence could be considered in a court's weighing of the "extraordinary equitable circumstances that affect the legitimate interests of either party."  *Id.*  The Court also stated that reinstatement or front pay generally would be an inappropriate remedy in such a circumstance.  *Id.*

Under *Teamsters* the EEOC must make a prima facie showing of a pattern-or-practice of discrimination, which is left to the employer to rebut by demonstrating a lawful reason for its employment decision.  431 U.S. at 360.  Thus, the district court's ruling on after-acquired evidence of dishonesty pertains to the employer's burden rather

than the EEOC's prima facie case.  However, under *Teamsters*, as under *McDonnell Douglas*, the district court's conclusion that any dishonesty by an individual in an employment application operates as a per se bar to relief, regardless of whether Cintas was aware of the dishonesty at the time of the employment decision, conflicts with the careful framework established in *McKennon*.  *See McKennon*, 513 U.S. at 358 ("It would not accord with this scheme if after-acquired evidence of wrongdoing that would have resulted in termination operates, in every instance, to bar all relief for an earlier violation.").  Indeed, case law from this Circuit suggests that, if anything, after-the-fact evidence of dishonesty should be considered only in determining the amount of damages due to the individual and not in the initial liability stage.  *See Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 416 n.2 (6th Cir. 2004) ("Thus, while this post hoc, additional ground for plaintiff's termination may be relevant to the calculation of any damages, it is irrelevant to the determination of whether defendant improperly terminated plaintiff under the ADA or the FMLA in the first instance."), *cert. denied*, 543 U.S. 1146 (2005); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 718 n.3 (6th Cir. 2003) ("Regardless, this misrepresentation clearly was not a factor in Honda's decision to separate Cavin because Honda was not aware of the misrepresentation at the time of Cavin's termination.  We do recognize, however, that the misrepresentation may be relevant to the calculation of Cavin's damages.").

It would be inappropriate for us to speculate as to what relief the EEOC may or may not be eligible to seek on behalf of allegedly dishonest individuals should it succeed in proving that Cintas was engaged in a pattern or practice of discrimination.  However, in light of the district court's prior ruling, we do wish to emphasize that consideration of individual applicants' dishonesty should be reserved for the remedial portion of the proceedings.

**E.  Administrative Prerequisites:  Conciliation of Claims**

Shortly after granting summary judgment to Cintas on the merits of the thirteen individual discrimination claims, the district court also granted Cintas summary judgment on the ground that the EEOC failed to comply with the administrative

prerequisites to suit under § 706.  Relying heavily on an opinion from the U.S. District Court for the Northern District of Iowa, the district court reached two principal conclusions:  (1) that the EEOC never investigated or sought to conciliate claims on a class-wide basis; and (2) even if it had, class-wide conciliation was not an adequate substitute for conciliation on behalf of the thirteen claimants the EEOC ultimately named in its enforcement action.  R. 936 (Dist. Ct. Op. at 11-16).  In view of our holding that the EEOC may properly proceed with class-based claims under the *Teamsters* framework, we need only review the first of the district court's conclusions, and we do so de novo.  *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009).

In *EEOC v. Keco Industries, Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984), we recognized that "the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of th[e] agency" and, consequently, that it is inappropriate for a "district court to inquire into the sufficiency of the Commission's investigation."  Instead, a district court should determine whether the EEOC made a good-faith effort to conciliate the claims it now asserts, thereby providing the employer with ample notice of the prospect of suit.  *Id.* at 1102.

Despite the district court's conclusions otherwise, it is clear that the EEOC provided notice to Cintas that it was investigating class-wide instances of discrimination. In fact, the EEOC's reasonable-cause determination letter explicitly stated as much.  *See* R. 836-40 (EEOC Ltr.) ("Furthermore, like and related and growing out of this investigation, there is reasonable cause to believe that [Cintas] has discriminated against females as a class by failing to hire them as Route Sales Drivers/Services Sales Representatives in violation of Title VII.").  Although the EEOC did not explicitly use the "females as a class" language in the proposed conciliation agreement, the agreement indicated that the EEOC sought class-based remedies by requesting relief for "other similarly situated qualified female applicants who sought employment with [Cintas]." R. 836-41 (Proposed Conciliation Agreement at 3, 4).  Given that these documents were provided to Cintas on the same day, there is no basis for concluding that Cintas was

unaware that the EEOC had investigated and was seeking to conciliate class-wide claims.

Moreover, Cintas does not appear to refute the EEOC's assertion that Cintas expressed no interest to the EEOC in reaching a settlement on these claims. As we recognized in *Keco*, "[t]he EEOC is under no duty to attempt further conciliation after an employer rejects its offer." 748 F.2d at 1101-02. Cintas's three-year silence in response to the EEOC's offer of conciliation can reasonably be interpreted as rejection and, accordingly, the EEOC acted appropriately in terminating conciliation and seeking to vindicate the claims through suit.

In light of this Circuit's decision in *Keco*, it is clear that the EEOC satisfied its administrative prerequisites to suit. Accordingly, we reverse the district court's contrary determination.

**F. Attorney Fees and Costs**

The district court awarded Cintas attorney fees and costs because it deemed the EEOC's failure to comply with Title VII's pre-litigation requirements to "constitute[] unreasonable conduct under *Christiansburg*" *Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978). R. 1079 (Dist. Ct. Op., 8/4/11, at 6). We review for abuse of discretion fee awards granted by a district court in the context of Title VII. *Noyes v. Channel Prods., Inc.*, 935 F.2d 806, 810 (6th Cir. 1991). Because we reverse the district court's determination that the EEOC did not comply with Title VII's administrative prerequisites to suit—the primary basis for the district court's award of attorney fees—we vacate the order granting attorney fees as well. This result is also mandated in recognition that, in view of our rulings, Cintas is no longer a prevailing party.

However, even if our prior rulings did not command reversal of the award of attorney fees and costs, we would conclude that the district court abused its discretion in ordering the EEOC to pay Cintas attorney fees and costs. Awards of attorney fees and costs are preserved typically only for "unreasonable, frivolous, meritless, or vexatious" conduct. *Christiansburg*, 434 U.S. at 421. The district court identified the "egregious

and unreasonable conduct" to include:  (1) the EEOC filing over a dozen losing motions; (2) the EEOC's failure to respond properly to Cintas's discovery request; (3) the EEOC's "refus[al] to produce information regarding the identities of each individual" plaintiff after dismissal of the EEOC's pattern-or-practice claim; and (4) the EEOC's pursuit of claims on behalf of approximately forty individuals, despite its ultimate withdrawal of those claims because they lacked merit.  R. 1079 (Dist. Ct. Op., 8/04/11, at 7-8).  Standing alone, these actions do not seem so "unreasonable" so as to warrant the district court's ruling.  *Christiansburg*, 434 U.S. at 422.  Moreover, none of the legal issues raised by the EEOC appear to have been "frivolous" or "groundless," nor has the EEOC engaged in "unreasonable" litigation strategies in pursuit of its claim.  *Id.* at 421-22; *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 438-39 (6th Cir. 2009).  The EEOC pursued its claim within the bounds of professional conduct and in the good-faith belief that it had done what was necessary to satisfy its administrative prerequisites to suit.  Accordingly, we see no basis for awarding Cintas attorney fees and costs as the district court has done here.  *See EEOC v. Bruno's Rest.*, 13 F.3d 285, 288 (9th Cir. 1993) (suggesting that the proper inquiry is not whether the EEOC failed to conciliate properly but "whether its belief that it had done so was reasonable").  We, therefore, reverse the district court's contrary determination.

### III.  CONCLUSION

In conclusion, we **VACATE** both judgments of the district court at issue in the present appeals and **REMAND** the case for further proceedings consistent with this opinion.

---

**CONCURRING IN PART/DISSENTING IN PART**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring in part and dissenting in part. In my view, both the panel majority and the district court, although reaching differing conclusions, have strayed into thorny issues of Title VII statutory construction that need not be considered to resolve this case. In so doing, they have overlooked rather basic and obvious principles that should be the basis for decision. Consequently, I join only limited portions of the majority opinion and respectfully dissent from the remainder.

The key to understanding the issues in this case is examining the precise language of the EEOC's pleadings. The EEOC's Complaint in Intervention, filed December 23, 2005, alleges that Cintas has intentionally discriminated against the three named plaintiffs and "a class of women" by refusing to recruit and hire them as SSRs because of their sex. No other elaboration is provided. Section 706 is only mentioned as one of the statutory provisions under which the EEOC believed it was authorized to bring suit. That first pleading was superseded by the EEOC's First Amended Complaint, filed August 20, 2009. The operative language of the First Amended Complaint with respect to Cintas's alleged discriminatory practices is identical to that of the Complaint in Intervention, except that the class of women is more specifically defined as "a class of women in the State of Michigan."

When Cintas sought judgment on the pleadings, it focused on the issue of whether a pattern-or-practice claim could be brought under § 706. But, as the majority recognizes, the motion necessarily implicated the sufficiency of the pleadings to raise a pattern-or-practice claim under any statutory provision. The district court focused on the statutory construction issue and concluded that such a claim could not be brought under § 706. The majority tackles both the question of whether § 706 is a proper vehicle for assertion of a pattern-or-practice claim, holding that it is, and the pleading sufficiency issue. With respect to the pleading sufficiency issue, the majority

characterizes the pleading insufficiency as the plaintiffs' failure to state their intention to proceed under the *Teamsters* framework or to plead a *prima facie* case under that framework. The majority determines that neither is required and therefore finds the complaint sufficient.

The majority is correct, I believe, in its assessment that neither mention of *Teamsters* nor the pleading of a *prima facie* case is required to bring a pattern-or-practice claim. But the point on which I differ from the majority is its conclusion that, since neither is required, the EEOC has therefore pled a pattern-or-practice claim. The EEOC's operative First Amended Complaint does not include even a shred of an allegation suggesting a pattern-or-practice claim. Like the Complaint in Intervention that it followed, it is fairly read only as pleading disparate treatment claims on behalf of the named plaintiffs and the women comprising the alleged class. The EEOC's pleadings give no notice that it is pursuing some other theory of relief.

Implicit in the majority's opinion is the notion that, because the complaint need not state an intent to proceed under *Teamsters* or the facts that will constitute a *prima facie* case, it is sufficient for the complaint to list the statutory provision under which suit is brought. There are situations in which that premise is arguably correct. For example, had the complaint sought relief under § 707, which specifically authorizes the EEOC to bring pattern-or-practice claims and only relates to such claims, it might be a viable argument that the statutory reference operates as notice of the claim brought. But the premise is not sound where the statutory provision cited is § 706, which is not limited to a particular type of employment discrimination claim.

Nor does mention of a "class" claim give notice of the nature of the claim. While certainly most, perhaps virtually all, pattern-or-practice cases are "class" cases, not all EEOC "class" cases are pattern-or-practice cases. A "class" case, from the EEOC's perspective, is simply a "suit[ ] on behalf of multiple aggrieved individuals who were victims" of a discriminatory employment practice or policy. *See* U.S. Equal Employment Opportunity Comm'n, *A Study of the Litigation Program Fiscal Years 1997–2001*, at § B.2 (Aug. 13, 2002), *available at*

http://web.archive.org/web/20021023165009/http://www.eeoc.gov/litigation/study/study.html.  In a "class" case, the EEOC may proceed under the *McDonnell-Douglas* paradigm to prove the discrimination claims of one or more individual charging parties as a platform for obtaining relief for a broader, unidentified group of individuals. *See, e.g.*, *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1189, 1191–1200 (10th Cir. 2000) (analyzing a pregnancy discrimination suit brought by the EEOC on behalf of four "[c]harging [p]arties and a group of similarly-situated pregnant employees" under *McDonnell-Douglas* and rejecting analogies to pattern-or-practice cases).  Thus, the mere mention that relief is sought on behalf of a "class" and the prayer for "class" relief add nothing as far as notice that a pattern-or-practice claim is being pursued.

The complaint here simply does not set forth sufficient facts to make the EEOC's claim for relief plausible.  As the majority notes, "[T]he pleading requirements for Title VII claims are no different than those for other claims; they are subject to the same requirement of setting forth 'enough facts to state a claim to relief that is plausible on its face.'" Maj. Op. at 15 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Twombly* standard is not met, in my view.

The majority seeks to excuse the EEOC's omission by saying that it may have relied on the complaint of the individual plaintiffs to allege a pattern or practice of discrimination.  The operative complaint of the individual plaintiffs, the Second Amended Complaint, filed September 12, 2005, does contain allegations sufficient to state such a claim. But I know of no reason that the EEOC should be able to rely on this complaint rather than advising the court and other parties in straightforward fashion which claims brought by individual parties it intends to pursue. *See* 5A Charles Alan Wright et al., *Federal Practice & Procedure* § 1326 (3d ed. 2004) ("[R]eferences to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation.")

Because the EEOC's complaint fails to state a pattern-or-practice claim, Cintas's motion was properly granted. The extensive analysis of the majority with respect to §§ 706 and 707 is simply unnecessary, and I would not reach that issue here.

The majority's treatment of the denial of the motion to amend, the discovery issues, the individual claims and, in part, the attorneys fees issue is premised on its ruling on the pattern-or-practice issue. Because I disagree with the majority's resolution of the pattern-or-practice issue, I might resolve some of the other issues differently. But it seems an unproductive use of judicial resources for me to analyze each of those issues in view of my preferred outcome in the case. My view on the pattern-or-practice issue, however, precludes my joining my fellow panelists' resolution of those issues. I do join the majority, however, in concluding that the EEOC satisfied its administrative prerequisites to suit and that, whatever the resolution of the pattern-or-practice issue, the district court abused its discretion in ordering the EEOC to pay Cintas's attorneys fees and costs.